**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Robert E. CARMICHAEL, Defendant-
Appellant.**

**No. 71-1492.**

United States Court of Appeals,
Seventh Circuit.

Reargued June 1, 1973.

Decided Oct. 9, 1973.

Kiley, Circuit Judge, filed opinion in which Swygert, Chief Judge, concurred, concurring in part and dissenting in part.

Gerald M. Werksman, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck and Arnold Kanter, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and KILEY, FAIRCHILD, CUMMINGS, PELL, STEVENS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

This case originated with the February 1969 issuance of a complaint by a United States Commissioner for the arrest of Robert E. Carmichael. The arrest warrant was issued on the complaint of Secret Service Agent Eugene Hussey, asserting a violation of the general conspiracy statute (18 U.S.C. § 371). The complaint was captioned "United States of America v. T. W. Allen, Robert E. Carmichael, and John Doe," and recited the following:

> "That on or about February 6, 1969, at Chicago, in the Northern District of Illinois, T. W. Allen, Robert E. Carmichael and John Doe did conspire to commit an offense against the United States, to wit, in violation of Title 18, United States Code, Section 371, in that each of them had in his possession mail or articles contained therein

which have been stolen, taken, embezzled and abstracted from and out of the United States mail; and, in furtherance of such conspiracy, they held a meeting on February 5, 1969.

> "And the complainant states that this complaint is based on the fact that your complainant was told by a reliable informant,[1] whose information in the past has led to the conviction of at least six people, that T. W. Allen, Robert E. Carmichael and John Doe have in their possession numerous treasury and commercial checks, one [of] which is a check made payable to Photo Finishers, in the amount of $5,-276.00. The confidential informant told your complainant that he has seen these checks in the possession of one of the defendants[2] and that the defendant who had possession told him that the checks would be given by Robert E. Carmichael to John Doe and then to T. W. Allen, and that these checks were stolen from the mail, and that Robert E. Carmichael, T. W. Allen and John Doe would cash or cause these checks to be cashed."

Pursuant to the warrant, Hussey arrested defendant Carmichael on February 10, 1969, in Harvey, Illinois. In April 1969, a five count indictment was returned against Carmichael, asserting that on February 10, 1969, in Harvey, Illinois, he possessed three U.S. treasury checks, a check issued by Gary's Pay-Less Drugs, and a check issued by the Illinois Central Railroad Company, knowing that they had been stolen from the mail, in violation of 18 U.S.C. § 1708.[3] On the Government's motion, Counts I, II, and

---

1. At the subsequent hearing on the motion to suppress the arrest warrant, Hussey testified that T. W. Allen was the informant.

2. "Defendants" refer to the three persons named in the complaint—Carmichael, Allen, and Doe. Only Carmichael was subsequently indicted in connection with the events alleged in the complaint. Doe was Harold Mundel (see note 4, *infra*).

3. The pertinent part of 18 U.S.C. § 1708 is contained in its last two paragraphs, providing as follows:

"Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

"Shall be fined not more than $2,000 or imprisoned not more than five years, or both."

V were subsequently dismissed. Count III covered the possession of stolen treasury check 240,955 "being the contents of a letter addressed to Aunt Mid, Inc." Count IV covered the possession of stolen check C 07138, issued by Gary's Pay-Less Drugs, "being the contents of a letter addressed to Foto Finisher[s]."

At the ensuing jury trial on Counts III and IV, Hussey testified that he first saw defendant on February 10, 1969, outside the house of Travis W. Allen at 902 West 109th Street, Chicago, in defendant's auto, where defendant was joined by Allen. They drove to 154th and Center Streets in Harvey, Illinois, where defendant parked his Cadillac El Dorado. Allen left the car and walked north and then east toward the First National Bank of Harvey. Defendant remained in the driver's seat of his Cadillac. When Allen returned toward the car he was placed under arrest by two other government agents. Thereupon Hussey arrested defendant, who was placed in a government car. Hussey then searched defendant's car and found 31 checks in an envelope under the carpeting of the car below the right-hand glove compartment on the passenger's side of the car. Among the 31 checks found were those specified in Counts III and IV of the indictment. Hussey said he first saw the government check described in Count III in Allen's office at 8:00 a. m. on February 4, 1969, when Allen showed him 12 to 14 checks. On that occasion, Allen told Hussey that the government check in question was stolen. Allen had been an informant for the Secret Service and had summoned Hussey to his office on February 4. Hussey knew Allen for about four years. Allen also telephoned Hussey on February 10 before 9:00 a. m., evidently about the rendezvous that took place later that day.

Narcotics Agent John Peoples testified that he was in Carmichael's apartment at 3:00 p. m. on February 4 and saw defendant take the check described in Count IV and apparently other checks from a large manila envelope in the view of Harold Mundel,[4] Elizabeth Sykes, and one or two other women. In their presence, defendant said that the checks were stolen "and that they were attempting to cash one of the checks and they were trying to find a place they could cash the check on that particular day," referring to the Count IV check and possibly alternatively to a check payable to Marjorie Harris not mentioned in the indictment.

Defendant took the stand and denied ever seeing the indictment checks. He said he did not know there was an envelope containing checks under the floor-carpeting of his Cadillac on the day of his arrest. He denied that he had shown Peoples any stolen checks or an envelope containing checks. Defendant said he never discussed cashing stolen checks with Peoples. Defendant admitted meeting T. W. Allen through Harold Mundel ten days prior to his arrest. In all, defendant saw Allen three times. Mundel also introduced defendant to Agent Peoples. Prior to his arrest, defendant met Peoples twice.

The jury returned a guilty verdict under both Counts III and IV of the indictment, and defendant received concurrent sentences of five years on each of those counts. This appeal followed.

On November 6, 1972, a panel of this Court (Judge Fairchild dissenting) held that the above-described affidavit of Agent Hussey was insufficient on its face to establish probable cause for defendant's arrest, so that the defendant's motion to suppress the arrest warrant should have been granted. The panel did not consider whether the trial judge erred in precluding defendant's questioning of Agent Hussey concerning the reliability of informer T. W. Allen. See 489 F.2d 979, 980. On reargument before the full Court, we hold that the affidavit was facially sufficient but that the district judge erred in denying defendant the opportunity to challenge the reliability of the informant at the hearing on the motion to suppress.

4. According to defense counsel, at trial Mundel turned out to be the John Doe named in the Commissioner's complaint.

## I

Defendant first contends that Agent Hussey's affidavit in support of the search warrant was insufficient on its face. It is true that the bulk of the affidavit was based on hearsay conveyed by a confidential informant, but that alone does not flaw the affidavit. United States v. Harris, 403 U.S. 573, 580–581, 584, 91 S.Ct. 2075, 29 L.Ed.2d 723; Spinelli v. United States, 393 U.S. 410, 412, 89 S.Ct. 584, 21 L.Ed.2d 637; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

Analyzing the affidavit, it appears that Agent Hussey initially vouched for the reliability of the informant [5] and attested that information given by that person had led to the convictions of at least six people in the past. The informant conveyed his own knowledge based on his personal observation of the check specified in Count IV of the indictment in the possession of one of the three defendants named in the Commissioner's complaint.[6] The informant gave Hussey the name of the payee and the precise amount of the check.

Thus far, as in United States v. Unger, 469 F.2d 1283 (7th Cir. 1972), United States v. Edge, 444 F.2d 1372 (7th Cir. 1971), and United States v. Buonomo, 441 F.2d 922 (7th Cir. 1971), the credibility of the informant was established by his personal observations, and also by Hussey's attestation that information given by that source had resulted in the conviction of six persons in the past. Thus in contrast to United States v. Roth, 391 F.2d 507 (7th Cir. 1967), this informant's reliability was adequately spelled out by Hussey. Indeed, at the prior argument before the panel in September 1972, defendant's counsel at least conceded *arguendo* that the affidavit was sufficient on its face.[7]

It is immaterial here that the concluding portion of Hussey's affidavit contained hearsay, namely, the statement of the second informant, *i. e.*, the possessor of the checks,[8] to the first informant that the checks would be given by defendant Carmichael to John Doe (Harold Mundel) and then to Allen; that they were stolen from the mail; and that Carmichael, Allen and Doe would cash or cause them to be cashed. The statement by the second informant was an admission against penal interest, thus manifesting his reliability and constituting an exception to the hearsay rule. United States v. Harris, *supra*, 403 U.S. at 583–584, 91 S.Ct. 2075; Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297; Rule 804(b)(4) of the Proposed Rules of Evidence for the United States Courts and Magistrates (1973).[9] Such hearsay upon hearsay is not inherently defective. See United States v. Fiorella, 468 F.2d 688, 691 (2d Cir. 1972); United States v. Smith, 462 F.2d 456, 459 (8th Cir. 1972). As we held in United States v. Wilson, 479 F.2d 936, 941 (7th Cir. 1973), hearsay based on hearsay is acceptable in this instance as long as the affiant has "sufficient information so that both levels of hearsay meet the two-pronged test spelled out" in Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723, relating to (1) the reliability of the informant and (2) some knowledge of the underlying facts to support the conclusion that a crime had been committed. Here, as seen, the reliability of the first informant was established by Hussey's statement of the informant's past success in six instances. The reliability of the sec-

---

5. See note 1, *supra*.

6. See note 2, *supra*.

7. Even defendant's answer to the Government's petition for rehearing *en banc* admits that the concession was made *arguendo* (at p. 3).

8. From the trial testimony, it seems that Carmichael was the second informer.

9. Cashing stolen checks would also give rise to tort liability for conversion. The second informant's statement was therefore also an admission against pecuniary interest, an exception to the hearsay rule even in those jurisdictions that do not recognize admissions against penal interest as an exception. Chambers v. Mississippi, 410 U.S. 284, 289, 93 S.Ct. 1038, 35 L.Ed.2d 297.

ond informant inheres in his statements against interest. Furthermore, the statements of both informers contain knowledge of supporting facts showing that illegal acts were being committed by Carmichael. Thus both *Aguilar* tests were satisfied; unlike *Roth*, it is apparent that the first informant did not receive information from a "wholly unreliable" second informer. In sum, when Hussey's affidavit is read in a common-sense way, it justifies the district court's conclusion that the Commissioner had a sufficient basis to find probable cause to support the arrest warrant. United States v. Noreikis, 481 F.2d 1177, 1179 (7th Cir. 1973). In so holding, we are in nowise relying on the identification of the two informants.

## II

Defendant next urges that the trial court erroneously refused to allow defense counsel to elicit evidence at the hearing on the motion to suppress that would cast doubt on the reliability of informant T. W. Allen. Agent Hussey was the sole witness at that hearing. He stated that he arrested defendant on February 10, 1969, on a warrant obtained from United States Commissioner Balog on February 6, 1969, pursuant to a complaint signed by Hussey on the same date. The agent testified that the name of the "reliable informant" mentioned in his affidavit was T. W. Allen. As to the statement in the affidavit for the arrest warrant that information from T. W. Allen "in the past has led to the conviction of at least six people," defense counsel asked Hussey to "give us the names of those people, where they were convicted and for what." Government counsel objected on the ground of relevancy and his objection was sustained. Defense counsel then said that under Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, he was entitled to challenge the reliability of the informant Allen, but the court let its ruling stand.

Hussey then testified that he saw the check mentioned in the Commissioner's complaint and covered in Count IV of the indictment on February 4, 1969, in an office on 114th Street in Chicago, and that T. W. Allen showed it to him then.

Defense counsel next asked Hussey for the name of John Doe,[10] who was twice mentioned in the affidavit for the arrest warrant. Government counsel objected to the question, again on the ground of irrelevancy, and this objection was likewise sustained.

Hussey was then asked whether he made any effort to verify the statement in his affidavit that these checks were stolen. Another objection based on irrelevancy was sustained. Objections were also sustained to questions covering the following subjects:

1. Past information given Hussey by T. W. Allen that led to the conviction of six people.

2. When Allen gave Hussey such information.

3. The basis for Hussey's conclusion that Allen was a reliable informant.

4. The length of time that Hussey knew Allen.

5. Any prior criminal convictions of Allen.

6. Any prior arrests of Allen.

After being foreclosed from the foregoing inquiries, defense counsel made the following offer of proof:

"If the witness [Agent Hussey] were allowed to answer my questions with respect to the reliable informant, his answers would show that no information had been given [by Allen] at any previous time that led to the arrest or conviction of anybody; that he [Allen] had prior criminal arrests and criminal convictions, and that there was no basis for his [Hussey's] concluding or for this court to conclude that the allegedly reliable informant was a reliable informant."

10. See note 4, *supra*.

Without giving any supporting reason, the Assistant United States Attorney objected to the offer of proof "specifically and generally, as to each thing and as to the offer of proof in general," resulting in another ruling favorable to the Government.[11]

The Supreme Court has not decided on the extent to which a court may permit evidence with respect to the validity of a warrant that is valid on its face where the allegations of the affidavit establish probable cause. Rugendorf v. United States, 376 U.S. 528, 531–532, 84 S.Ct. 825, 11 L.Ed.2d 887. However, in United States v. Pearce, 275 F.2d 318, 321–322 (1960), this Court expressed its opinion in dicta that the propriety of such a hearing "is hardly open to question." To like effect, see our opinion in United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967). Subsequently, in United States v. Edge, 444 F.2d 1372, 1375–1376 n. 8 (7th Cir. 1971), we recognized "the difficulties inherent in deciding when and how far to permit attack upon the truthfulness of affidavits submitted to magistrates" and formerly to commissioners. In *Pearce* and *Roth,* the hearings were actually allowed in the trial courts,[12] so that there was no need for this Court to decide whether a defendant could insist on such a hearing; and in *Edge* the question before us now was left open.

■ We now hold that a defendant is entitled to a hearing which delves below the surface of a facially sufficient affidavit if he has made an initial showing of either of the following: (1) any misrepresentation by the government agent of a material fact, or (2) an intentional misrepresentation by the government agent, whether or not material. See generally United States v. Dunnings, 425 F.2d 836, 840 (2d Cir. 1969), certiorari denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412; United States v. Halsey, 257 F.Supp. 1002 (S.D.N.Y.1966); Kipperman, "Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence," 84 Harv.L.Rev. 825 (1971).[13]

■ However, once such a hearing is granted, more must be shown to suppress the evidence. Evidence should not be suppressed unless the trial court finds that the government agent was either recklessly or intentionally untruthful. A completely innocent misrepresentation is not sufficient for two reasons. Most importantly, the primary justification for the exclusionary rule is to deter police misconduct (see Kipperman, *supra,* at 831, and cases cited), and good faith errors cannot be deterred. Further-

---

11. Through an offer of proof made at the ensuing trial, during defendant's case his counsel stated that if Hussey had been allowed to testify with respect to the background of T. W. Allen, he would have testified that Allen had been convicted of two felonies, *viz.,* a federal conspiracy to possess stolen checks and a state deceptive practice charge.

In requesting the trial court to reconsider its ruling on the motion to suppress, defense counsel later stated that he had learned that J. B. Floyd was acquitted in June 1969 in a case in which T. W. Allen was the person who led to Floyd's arrest.

12. See also King v. United States, 282 F.2d 398 (4th Cir. 1960); Jackson v. United States, 118 U.S.App.D.C. 341, 336 F.2d 579, 586 (1964); United States v. Ramos, 380 F.2d 717 (2d Cir. 1967); United States v. Upshaw, 448 F.2d 1218 (5th Cir. 1971); United States v. Harwood, 470 F.2d 322 (10th Cir. 1972); cf. United States v. Gil-

lette, 383 F.2d 843, 847 (2d Cir. 1967). United States v. Hockenberry, 474 F.2d 247, 248 (3d Cir. 1973), on which defense counsel has relied under Circuit Rule 29, deals with a defendant's grand jury admissions of giving false statements in support of search warrants and is really not germane to the problem before us.

13. Indeed, Professor Forkosch has recently argued that upon a preliminary showing of falsehood or other imposition on a magistrate, a person has a Fourth Amendment right to challenge the truthfulness and credibility of an affiant subscribing to the papers supporting an arrest warrant. Forkosch, "The Constitutional Right to Challenge the Content of Affidavits in Warrants Issued Under the Fourth Amendment," 34 Ohio St. L.J. 297, 314, 328, 340 (1973). The present opinion is not based on constitutional grounds, for defendant has not urged such a right and it is unnecessary so to hold.

more, such errors do not negate probable cause. If an agent reasonably believes facts which on their face indicate that a crime has probably been committed, then even if mistaken, he has probable cause to believe that a crime has been committed. Such errors are likelier and more tolerable during the early stages of the criminal process, for issuance of a warrant is not equivalent to conviction.

■ Negligent misrepresentations are theoretically deterrable, but no workable test suggests itself for determining whether an officer was negligent or completely innocent in not checking his facts further. We therefore conclude that evidence should not be suppressed unless the officer was at least reckless in his misrepresentation. Even where the officer is reckless, if the misrepresentation is immaterial, it did not affect the issuance of the warrant and there is no justification for suppressing the evidence. Arguably, the same conclusion could be reached as to deliberate but immaterial misrepresentations. However, we conclude that if deliberate government perjury should ever be shown, the court need not inquire as to the materiality of the perjury. The fullest deterrent sanctions of the exclusionary rule should be applied to such serious and deliberate government wrongdoing.

The rule we announce today is intended only to test the credibility of government agents whose affidavits or testimony are before the magistrate. The two-pronged test of Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (supra p. 986), sufficiently tests the credibility of confidential informers. Consequently, defendant may not challenge the truth of hearsay evidence reported by an affiant. He may, after a proper showing, challenge any statements based on the affiant's personal knowledge, including his representations concerning the informer's reliability, his representation that the hearsay statements were actually made, and his implied representation that he believes the hearsay to be true. This fills the gap not covered by the *Aguilar* tests, and, as the pertinent American Law Institute Commentary explains, "it would be a very rare situation in which the * * * [law enforcement officials] are hoodwinked by a Baron Munchausen." [14]

■ Defense counsel's offer of proof, along with information about T. W. Allen's possible unreliability that was brought out by defense counsel at trial, was sufficient to make the threshold showing required. In the absence of prior guidelines from this Court, we will not fault defense counsel for not making his initial showing by way of affidavit, but in the future any suggestion that the evidence on probable cause should not be credited must be supported by affidavit unless, as here, the informant's name is not disclosed until the suppression hearing. Cf. American Law Institute, Model Code for Pre-arraignment Procedure, Official Draft No. 1 (July 15, 1972), Section SS 290.3(1) [15] and Commentary thereon at pp. 222–226. The A.L.I. procedure has been advocated on reargument by government counsel

---

14. Commentary on Section SS 290.3(1) of A.L.I. Model Code for Pre-arraignment Procedure, Official Draft No. 1 (July 15, 1972), p. 224.

15. This Section provides:
"*Challenge to Evidence of Reasonable Cause*
(1) Contesting Evidence for Issuance of Warrant.
(a) Subject to the provisions of paragraph (b), in any proceeding on a motion to suppress evidence seized by authority of a search warrant, or incidental to an arrest made by authority of an arrest warrant, the moving party shall be entitled to contest, by cross-examination or offering evidence, the good faith of any testimony presented to the issuing authority and relied on to establish reasonable cause for issuance of the warrant.
"(b) The moving party shall be allowed to make the contest authorized in paragraph (a) only upon preliminary motion, supported by affidavit, setting forth substantial basis for questioning the good faith of the testimony, and such party shall have the burden of proving the lack of good faith."

for use in future cases in this Circuit. Since the hearing on the motion to suppress was too circumscribed, the reliability of informer Allen may now be probed before the district court, subject to Circuit Rule 23.

If the Government had attempted to justify the arrest by showing that arresting officer Hussey had more information than he put in the complaint and therefore had probable cause in fact even if the warrant was invalid (see United States v. Fachini, 466 F.2d 53 (6th Cir. 1972)), defendant of course would have been free to show that Hussey did not have all the information claimed.

### III

For the reasons given in the prior panel opinion (489 F.2d at 982), we approve the district court's rulings permitting the Government to cross-examine defendant about his criminal activities on February 4, 1969, and permitting Narcotics Agent Peoples' rebuttal testimony.

Vacated and remanded for a hearing consistent herewith. In the event the motion to suppress is denied, the conviction will stand.

KILEY, Circuit Judge, with whom SWYGERT, Chief Judge, concurs (concurring in part and dissenting in part).

I concur in part II of the majority opinion, but I respectfully dissent from part I which holds that Hussey's affidavit for the arrest warrant for Carmichael was facially sufficient. My dissent is based upon the reasons given in the original panel opinion decided November 6, 1972, as supplemented by the views I now express.

In our panel decision (Fairchild, J., dissenting) we "assumed" that the "confidential informant's" reliability was established, and we decided that Hussey's affidavit showed probable cause for the magistrate's conclusion that "one of the defendants" possessed the check. We held that the affidavit was insufficient on its face to arrest Carmichael, since his probable criminal culpability was based upon the statement of an anonymous second informant whose reliability was not adequately determined under *Aguilar* and *Spinelli*.

The majority of this court now bases its *en banc* opinion that the Hussey affidavit is sufficient facially upon the following: (A) the reliable informant told Hussey that he saw the "checks" in the possession of "one of the defendants" named in the complaint, and gave Hussey the payee's name and the precise amount of the Foto Finishers' check; (B) Carmichael's attorney "at least conceded *arguendo*" in oral argument that the Hussey affidavit was facially sufficient; and (C) the "defendant in possession" told the reliable informant that the checks were stolen and were to be given by Carmichael to Doe and to Allen and would be cashed or caused to be cashed by the three of them.

The majority thereupon concluded that the *Aguilar* tests of credibility and reliability were met to justify the magistrate's issuance of the warrant for Carmichael's arrest.

#### A.

Our panel assumed the credibility of the confidential informant, and I adhere to the assumption that he, whoever he was, saw the checks in possession of "one of the defendants."

#### B.

I disagree with the *en banc* court that Carmichael's attorney in oral argument "at least conceded *arguendo*" that the Hussey affidavit was facially sufficient. The tapes of neither the original oral argument nor the *en banc* argument warrant the inference that the concession was made *arguendo*. The attorney stated that:

We don't know whether one of the defendants the confidential informer is talking about is himself or someone else, and it's very confusing. . . . With respect to the reliability [as to

the reason for his challenging the facial sufficiency] and—ah—it's so confusing I don't know why the agent went about it this way. . . . I don't think I can [attack this affidavit on the ground that it is hearsay]. I think the law is against me on that. . . . I keep reading—I think I keep reading cases that say hearsay is permissible. . . .

We noted in our panel decision that Carmichael's attorney urged two reasons for reversal of the denial of the motion to suppress: first, that he was entitled to a hearing at which he could cross-examine Hussey as to the reliability of the confidential informer; second, the facial insufficiency of the warrant. We did not reach the "first," having decided in Carmichael's favor on the "second." The most that can be said about Carmichael's attorney's statements in oral argument is that the affidavit's hearsay was confusing; that "since it is all hearsay it is impossible to determine the credibility;" and that the attorney's principal focus was upon his "first" reason.

### C.

The crucial hearsay upon hearsay of the second informant to the reliable informant contained in Hussey's affidavit is material to the decision, since it alone implicates Carmichael. The *en banc* majority relies upon the statement of the "defendant in possession" to the confidential informant that the checks were stolen and were to be given by Carmichael to Allen and to Doe, who would cash the checks or cause them to be cashed.

The majority's reliance for finding the statement credible is that the criticial statement of the second informant was against his penal and pecuniary interests, and thus his statements were

trustworthy. The majority concluded that the *Aguilar* tests of credibility and reliability were met and justified the magistrate's issuance of a warrant for arrest of Carmichael.

The second informant's statement was an admission against his own penal interest.[1] But the decision in United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), compels no finding here on the issue of whether the unnamed second informant's admissions against his penal interest were sufficiently trustworthy in the federal system to establish the credibility of his admissions made to incriminate Carmichael. In *Harris*, "[q]uite apart from the affiant's own knowledge" of Harris' illicit activities, the informer declarant, "who feared for his life" if named, was interviewed by the agent and found to be "prudent." The Court stated, at 584, 91 S.Ct. at 2082, that "concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another." In *Harris* the declarant's admission that over a long period he had been buying liquor on the premises implicated the property.[2] And the reliance in this court, and in the Supreme Court in *Harris*, on the Proposed Rules of Evidence for the United States Courts and Magistrates has been weakened. *See* United States v. Kissane, 478 F.2d 1098 (7th Cir. 1973), and United States v. DiVarco and Arnold, 484 F.2d 670 (7th Cir. 1973).

I agree that double hearsay does not "automatically" make an affidavit insufficient; and that the "question is whether the information given by the informant, taken in the light of the totality of circumstances, can reasonably be said to be reliable." *Fiorella, supra,* 468 F.2d at 691. Assuming that the unidentified second informant's statement

---

1. The element of "pecuniary interest" is a fragile base for sustaining the idea of trustworthiness, even if the statement of the second informant could establish his tortious conversion; and a more fragile base against the pecuniary interest of Carmichael, who

has not been identified by the majority as the second informant.

2. The admission in *Harris* was made to the affiant, a "federal tax investigator," not to another informer, as in the case before us, who then told Hussey.

is reliable because it is a declaration against his penal interest, unless the second informer is Carmichael [3]—and in my view there is no reasonable manner in which the affidavit could be read to identify Carmichael as the second informer—neither *Harris* nor the reasoning underlying the hearsay exception supports a conclusion here that, without more than the declaration, probable cause exists for his arrest. The hearsay exception does not provide per se reliability of the declarant but only that his declaration is trustworthy because "persons do not make statements which are damaging to themselves unless satisfied for good reason that they are are [sic] true." [4]

There is no presumption in the law that criminals are so trustworthy that they do not make statements damaging to others unless satisfied that they are true. Justice Harlan in his dissent in *Harris*, 403 U.S. at 595, 91 S.Ct. at 2088, "inclined to the view . . . that magistrates may not properly predicate a determination that an unnamed confidant is credible upon the bare fact that by giving information he also confessed to having committed a crime." He noted that the government had in its *Harris* brief conceded that police informants are often less reliable than ordinary citizens.

It is true that we are dealing with a pre-trial question of probable cause and not a trial. Nevertheless there must be a "substantial basis" for crediting hearsay. *Harris*, at 581, 91 S.Ct. 2075. The magistrate was presented no facts to form a "substantial basis" supporting an inference of unlawful conduct by Carmichael. That "one of the defendants" had possession of a $5,276.00 check payable to Foto Finishers and that "one of the defendants" told a "reliable informant" that the "checks were stolen from the mail" no more implicates Carmichael than it does any "John Doe" whom the police might seek to arrest.

No reason appears why Hussey could not have, as the affiant in *Harris* did, elicited more information from the confidential informant about the "defendant in possession"—*i. e.,* his name, why his name could not be used, and his reputation. Had Hussey done so, he might have been able to vouch for the credibility of the second informant and the reliability of his admissions.

In my opinion the Hussey affidavit was not sufficient to support an inference of the magistrate that Carmichael was probably guilty of possession of checks stolen from the mail, knowing them to be stolen. Rather, the Hussey affidavit presented a puzzle for the magistrate as to which "defendant" made the incriminating statement to the confidential informant, and presented no "substantial basis" (*see Harris,* at 581, 91 S.Ct. 2075) for crediting the second informant's implication of Carmichael.

To require a federal agent to prepare an affidavit stating probable cause sufficient for the arrest of a person is not unduly burdensome. The government has no sufficient countervailing interest in sustaining Hussey's puzzling affidavit against Carmichael's constitutionally protected privacy interest. An affidavit ought to contain sufficiently clear statements of fact and trustworthy hearsay which will enable the magistrate, without prolonged study, by a commonsense reading to determine whether probable cause exists for the arrest. We ought to require a more professional performance by government agents than the *en banc* court has required here.

---

3. The *en banc* majority, in footnote 8 on page 986 of its opinion, states "from the trial testimony it seems that Carmichael was the second informer." No additional testimony was given to the issuing magistrate to supplement the Hussey affidavit, and subsequent testimony at the suppression hearing or at trial could not rehabilitate the affidavit. We have frequently noted that the quality of an affidavit must be judged as of the time of issuance.

4. Moore's Federal Practice, Proposed Rules of Evidence 148 (Temp.Pamph.1973.)