**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Terry SMITH, Defendant-Appellant.**

**No. 74–1176.**

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1974.

Decided June 28, 1974.

William M. Coffey, Milwaukee, Wis., for defendant-appellant.

David B. Bukey, U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before STEVENS, SPRECHER and TONE, Circuit Judges.

SPRECHER, Circuit Judge.

The questions raised by this appeal are the sufficiency of the affidavits presented to support the issuance of a search warrant and the denial of an evidentiary hearing upon defendant's mo-

tion to suppress evidence on the ground that the affidavits contained false material allegations.

Defendant Terry Smith was indicted for conspiracy in violation of 21 U.S.C. § 846 to manufacture and possess with intent to manufacture amphetamines, controlled substances, in violation of 21 U.S.C. § 841(a)(1).[1] A jury found defendant guilty and he was sentenced to two years' imprisonment with a special parole term of two years. Defendant has appealed on two grounds relating to the district court's denial of his motion to suppress.

I

The warrant to search the house located at 5500 North 60th Street, Milwaukee, Wisconsin, was issued by a United States magistrate on the basis of two affidavits, one by Richard L. Ripley, a special agent for the Bureau of Narcotics and Dangerous Drugs (BNDD), and the other by Joseph P. Del Campo, a special agent for the Federal Bureau of Investigation.

The two affidavits "must be read in *pari materia.*" United States v. Noreikis, 481 F.2d 1177, 1178 (7th Cir. 1973), cert. denied, 415 U.S. 904, 94 S. Ct. 1398, 39 L.Ed.2d 461 as to two defendants and judgment vacated as to third on other grounds, 42 U.S.L.W. 3467 (1974).

Ripley stated that in his capacity as a BNDD agent he had participated in numerous investigations concerning the manufacture of amphetamines and that ether, lithium aluminum hydride and hydrochloric acid are components particularly used in such manufacture, and that beakers, thermometers and other assorted glassware also are implements so used.

Either Ripley or Del Campo, or both, personally observed the following events on April 26, 1973, the day before the issuance of the search warrant:

(1) Defendant, Harasymiw and an unidentified female entered a black and brown Cadillac automobile, with a license registered to defendant, located at 1523-A North 30th Street, Milwaukee.

(2) The three persons drove to Laabs Pharmacy, a pharmacy and chemical supply company, at 911 North 27th Street, Milwaukee, where Harasymiw went inside and later returned to the Cadillac with a package.

(3) The three persons then drove to 4850 North 91st Street, Milwaukee.

(4) Defendant entered and then left the 4850 address carrying a covered, flat, pan-like object and got into the Cadillac and drove to 5500 North 60th Street, Milwaukee.

(5) Defendant alone got into the Cadillac at the 5500 address; he drove to the Drug Fair Pharmacy, 6354 West Silver Spring Drive, where he went into the pharmacy; he returned to the car with a small package; and returned to 5500 North 60th Street.

(6) Defendant left the 5500 address and returned to 4850 North 91st Street.

(7) Copies of sales receipts obtained from Laabs, Inc. indicated that within the past week Harasymiw had purchased beakers, filter paper, a thermometer, quantities of hydrochloric acid, ethyl ether anhydride, ammonium hydroxide, sodium hydroxide and spatulas.

(8) The Milwaukee County Register of Deeds office indicated that the premises located at 5500 North 60th Street were owned by defendant Terry Smith and Sandra Smith.

Ripley stated that in the afternoon and early evening of April 26, he walked down the alley behind the house at 5500 North 60th Street, observed that all the window shades were drawn and many windows were open, and he detected the smell of ether emanating from the house.

Del Campo's affidavit stated that he had received information from a reliable informant within the past week. He established the reliability of the informant by the fact that the informant had ad-

l. James W. Harasymiw and Earl C. Waite were named as unindicted co-conspirators.

vised him that Cerac-Pure, Inc., located at N 56 W 13460 Silver Spring Drive, Menomonee Falls, Wisconsin, had been recently burglarized and that a quantity of chemicals had been taken. Del Campo had learned from another FBI special agent that Cerac-Pure had indeed recently found a quantity of lithium aluminum hydride missing and that it appeared that the company's premises had been burglarized.

The informant gave Del Campo the following information:

(1) On April 24, 1973, defendant and Harasymiw were present when a substance was tested for quality as amphetamine by "shooting up."

(2) On April 25, defendant, Harasymiw and two unidentified females were involved in the testing by ingestion and sniffing of a substance believed to be a type of amphetamine.

(3) On April 26, the premises at 5500 North 60th Street were being used by defendant and Harasymiw as a laboratory for the production of "mini-meths" and on the premises were located various glassware, vials, ether, chemicals, a pill machine and a pasty substance.

(4) The informant was advised by either defendant or Harasymiw that the pasty substance contained methamphetamine in a final stage of production.

Ripley concluded in his affidavit that on the basis of the surveillance conducted by him and Del Campo and upon the information contained in Del Campo's affidavit, "I have reason to believe that the premises located at 5500 North 60th Street, Milwaukee, Wisconsin, is currently being used to manufacture methamphetamines."

In support of his motion to suppress the evidence obtained in the search on April 27, 1973 of the premises located at 5500 North 60th Street, defendant submitted three affidavits.

In separate affidavits by defendant and Harasymiw each denied that he ever advised anyone that the premises were being used as a "mini-meths" laboratory or that glassware, vials, ether chemicals or a pill machine were on the premises or that a pasty substance containing methamphetamines was on the premises. Defendant also stated that the distance between the alley and house at 5500 North 60th Street was about fifty feet.

The third affidavit was that of a chemist who stated that the temperature in Milwaukee on April 26 was about forty-six degrees and the wind velocity about twelve miles per hour. He also stated:

. . . [T]hat given the weather conditions present on April 26, 1973, and due to the volatile nature of ether and its tendency to rise rather than move laterally in the air as it evaporates it would be very unlikely that an observer could detect the odor of ether emanating from inside a house at the distance of 50 feet and that if it were possible it would require a very large quantity of the chemical placed in an open container inside the home.

\* \* \* \* \* \*

. . . [T]hat unless the person smelling the odor is a trained chemical observer, it is very possible to confuse the odor of ether with other solvents such as turpentine or some cleaning fluids or even gasoline.

## II

Defendant's first argument attacked the sufficiency of the affidavits supporting the issuance of the search warrant. The Fourth Amendment requires that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation."

Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), requires that when an affidavit includes hearsay information, "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his informantion 'reliable.' "

The informant gave Del Campo information that on April 26, 1973 defendant and Harasymiw were using the premises located at 5500 North 60th Street as a laboratory for the production of "mini-meths," that necessary laboratory equipment was located there, and that the informant was advised by defendant or Harasymiw that a pasty substance also located there contained methamphetamine in a final stage of production. Insofar as Del Campo was concerned the first two statements were hearsay and the third statement, referring to a pasty substance, was hearsay upon hearsay.

Defendant and Harasymiw supported the motion to dismiss with their affidavits that neither of them ever "advised anyone" that 5500 North 60th Street was being used as a "mini-meths" laboratory or that equipment was located there or that a pasty substance contained methamphetamines. Of the three statements, as set forth in the Del Campo affidavit, only the last one referring to the pasty substance depended upon the advice of defendant or Harasymiw. The other two statements can be inferred to have been personal observations of the informant. Accepting the affidavits of defendant and Harasymiw as true, they cast doubt only on the veracity of the "pasty substance" allegation and tend to support the other allegations as being within the personal knowledge of the informant rather than hearsay relayed by the informant to Del Campo.

If there was probable cause to believe that a "mini-meths" laboratory was operating on the premises, it is immaterial whether defendant or Harasymiw advised the informant about the pasty substance.

Mr. Justice Clark said in Rugendorf v. United States, 376 U.S. 528, 532, 84 S. Ct. 825, 828, 11 L.Ed.2d 887 (1964), that "assuming, for the purpose of this decision, that such attack [upon the facial allegations of the underlying affidavit] may be made . . . .."

[t]he factual inaccuracies depended upon by petitioner to destroy probable cause—i. e., the allegations in the affidavit that petitioner was the manager of Rugendorf Brothers Meat Market and that he was associated with his brother Leo in the meat business —were of only peripheral relevancy to the showing of probable cause, and, not being within the personal knowledge of the affiant, did not go to the integrity of the affidavit.

The credibility of the informant and the reliability of the informant's information is corroborated in several ways. First, the information regarding the burglary of the Menomonee Falls company was given credence in the established manner of supportive information from another government agent. Rugendorf v. United States, 376 U.S. at 530, 84 S. Ct. 825 (1964).

Second, the surveillance functions of Ripley and Del Campo supported the informant's information. Suspicious activities such as purchasing the principal components or precursors for the manufacture of a controlled substance,[2] bringing such materials, or some of them, into the premises,[3] drawn blinds,[4] and the odor of ether emanating from the premises [5] all tend to establish probable cause. These activities were tied closely to the defendant by personal observance of him in relation to them, by the operation of an automobile registered to him

2. United States v. Noreikis, 481 F.2d 1177, 1178–1179 (7 Cir. 1973), cert. denied as to two defendants and judgment vacated as to third on other grounds, 415 U.S. 904, 94 S. Ct. 1398, 39 L.Ed.2d 461 (1974); United States v. Moore, 452 F.2d 569, 572 (6th Cir. 1971).

3. United States v. Ventresca, 380 U.S. 102, 104, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

4. Newcomb v. United States, 327 F.2d 649, 653 (9th Cir. 1964).

5. United States v. Moore, 452 F.2d 569, 572 (6th Cir. 1971); United States v. Sterling, 369 F.2d 799, 801–802 (3d Cir. 1966). See United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965): "A qualified officer's detection of the smell of mash has often been held a very strong factor in determining that probable cause exists so as to allow issuance of a warrant."

and by the premises themselves which were owned by him jointly with another person.

Third, the informant's details, particularly as supported by defendant's and Harasymiw's affidavits ruling out hearsay acquisition of knowledge by the informant, sufficiently indicated direct observation and personal knowledge by the informant. United States v. Squella-Avendano, 447 F.2d 575, 581 (5th Cir. 1971). This, in turn, indicated that informant was an eyewitness, victim, coconspirator or a citizen rather than a professional informant and that the information carried some of its own indicia of reliability and credibility. United States v. Unger, 469 F.2d 1283, 1287 n. 4 (7th Cir. 1973).

### III

■ Defendant's second argument was that the district court erred in denying an evidentiary hearing upon his motion to suppress inasmuch as his affidavits in support thereof constituted an "initial showing" entitling him to a hearing, United States v. Carmichael, 489 F.2d 983, 988 (7th Cir. 1973).

We have shown that defendant's and Harasymiw's affidavit did not tend to taint, but indeed tended to support, all of the facts proffered by the informant with the exception of the irrelevant factor of the pasty substance. Furthermore, under *Carmichael* a defendant "may not challenge the truth of hearsay evidence reported by an affiant." 489 F.2d at 989. Therefore all that remained for consideration was the chemist's affidavit.

The Supreme Court has not yet decided whether a search warrant and its supporting affidavits, adequate on their face, may later be impeached. Rugendorf v. United States, 376 U.S. 528, 531-532, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); North Carolina v. Wrenn, 417 U.S. 973, 94 S.Ct. 3180, 41 L.Ed.2d 1144 (1974) (White, J., dissenting from denial of certiorari). However we have permitted such impeachment in this circuit, United States v. Roth, 391 F.2d 507 ('7th

Cir. 1967), provided that the defendant makes an "initial showing" by affidavit or other satisfactory means that a government agent has made an intentional misrepresentation or a negligent misrepresentation of a material fact. United States v. Carmichael, 489 F.2d at 988.

The chemist's affidavit alleged that given the weather conditions on April 26, 1973, "it would be very unlikely that an observer could detect the odor of ether emanating from inside a house at the distance of 50 feet" and "it is very possible to confuse the odor of ether with other solvents such as turpentine or some cleaning fluids or even gasoline."

To say that a subjective fact, such as whether a particular person can detect a particular odor, is unlikely or possibly subject to confusion, does not constitute an initial showing sufficient to entitle the defendant to an evidentiary hearing, particularly where, as here, the subjective fact is one of many elements constituting probable cause.

Judgment of conviction is affirmed. Affirmed.