**UNITED STATES of America**

v.

**John Dewey KEMP.**

**Crim. A. No. 76–078.**

United States District Court,
W. D. Pennsylvania.

Oct. 27, 1976.

Blair Griffith, U. S. Atty., Pittsburgh, Pa., for plaintiff.

H. David Rothman, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

Defendant in the above-entitled case has been indicted for unlawful possession, with intent to distribute, of heroin under 21 U.S.C. 841(a)(1). Defendant has moved to suppress evidence found during a search, pursuant to a search warrant, on the grounds that the affidavit presented to the magistrate in support of the search warrant issued for defendant's residence does not on its face disclose the existence of probable cause for the search.

The affidavit in this case was prepared by a local police officer and presented to a state magistrate. Nevertheless, if the United States wishes to present it in a federal prosecution, it must meet federal standards for admissibility. While the affidavit in this case would not withstand the scrutiny of a case note editor of a law review, we do not believe that this is the standard to be applied. Magistrates in the state court system, unlike federal Magistrates, are not required to be learned in the law. It is contemplated in the system, however, that they perform the function of a disinterested party interposed between the police and object of police action in order that there be some independent determination of whether the police have probable cause to take action. Therefore, the probable cause determination of the magistrate should be paid some deference by reviewing courts because of the importance of their function in the enforcement of the criminal law. *Jones v. United States*, 362 U.S. 257, 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697 [1960].

A standard for the construction of search warrants has been supplied by the Supreme Court:

[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 [1965], cited with approval in *United States v. Harris*, 403 U.S. 573, 577, 91 S.Ct. 2075, 29 L.Ed.2d 723 [1971].

Applications for search warrants are usually made by police officers based upon information that they have gathered either through their own observation or which has been related to them by some third party. Probable cause may be established by hearsay evidence. Fed.R. of Crim.P. 41(c); *United States v. Rugendorf*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 [1964]; *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 [1965]. To find probable cause from hearsay statements, the magistrate in the first instance must consider whether "a substantial basis for crediting the hearsay is presented." *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 [1960]. The Supreme Court has set the standards for this determination in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 [1964], where it held that "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identi-

ty need not be disclosed, . . . was 'credible' or his information 'reliable.' " (p. 114, 84 S.Ct. p. 1514)

█ In this case the affidavit for the search warrant made by a police officer recites information supplied through several intermediary police officers whose reliability is not here in question. The information was supplied by one "Source", whose identity was unknown to the police officers and whose reliability cannot be established other than by independent verification of the details he provided and two Informants who had each allegedly proven to be reliable in the past and whose reliability is thus established.

The unidentified Source provides a great wealth of detail about the involvement of the defendant in the heroin trade, and is obviously the result of the personal knowledge of the Source. If credible, this information is fully sufficient to support this warrant.

This anonymous Source details defendant's travels and activities in the heroin trade and consists primarily of personal observations by the Source, including observations of the various hiding places of the heroin in a bar supposedly owned by defendant. The police checked all the easily verified facts supplied by this Source and found them to be accurate. These verified statements, however, are only such facts as are in the public domain, such as the defendant's name, address, ownership or possession of automobiles, and ownership of a bar. However, the incriminating information given by Source is largely, if not entirely, unverified by any other reliable source. Those items of information which have been verified could have been known by any casual acquaintance of the defendant and are, in themselves, completely innocent.

The government argues that the reliability of Source's information is corroborated by information from two Informants. Informant number I who is averred to be "both true and correct as far as narcotic activity in the City of Pittsburgh has again come forward with information as to a one

JOHN KEMP and his wife JANICE KEMP . . .". Nothing further in the affidavit indicates what Informant number I said, although the affidavit continues as follows: "With the information recieved from this informant and from other sources, state that this actor and his wife are very heavly involved in the Heroin traffick from Los Angeles, Calif, to Pgh. Pa. where these illisit narcotics are then dispenced, after being cut and packaged by these above named actors." (sic). The weakness of this alleged corroborative evidence is that the affiant fails to state exactly what Informant number I told him and whether the information came from Informant's personal knowledge or was merely a statement of his knowledge of defendant's reputation in the community.

Nevertheless, this reference to this Informant and other sources indicate police knowledge of a subject's reputation, a factor to be given weight:

"We cannot conclude that a policeman's knowledge of a suspect's reputation— something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice Frankfurter—is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that *Spinelli* prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation." *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 [1971] Burger, C. J., plurality opinion.

█ The affidavit also refers to a statement from Informant number II who is termed "reliable". Informant number II's reliability is supported by a statement that he had "in the past provided information which resulted in the arrest of (another named person) and the seizure of drug evidence." This is a sufficient allegation of reliability. See *United States v.*

*Cummings*, 507 F.2d 324 [8th Cir. 1974]. The information supplied by Informant number II was that on January 27, 1976, the defendant had arrived in Pittsburgh with a large quantity of heroin in his possession. No details are supplied to indicate whether Informant number II's information came from personal knowledge or from rumor.

The government makes several arguments in support of the reliability of the evidence given by the Source. First, the great amount of detail given by the anonymous Source is claimed as an indication of its validity. However, *Aguilar* appears to require that there be sufficient facts in the affidavit from which the magistrate can make an independent evaluation of the reliability of the information. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 [1969], allows the consideration of information from an anonymous tip when certain parts have been corroborated by independent sources. Our question becomes one of whether the kind of details in the Source's account, here verified, are sufficient to establish reliability without any other evidence of such reliability. The incriminating parts of Source's story which may be considered verified are his statement that Kemp had on January 26 and 27, 1976, returned from California to Pittsburgh with some heroin. This verification, however, consists of a statement of Informant number I that Kemp was heavily involved in narcotics traffic from Los Angeles to Pittsburgh and by the statement of Informant number II on January 27, 1976, that Kemp had just arrived in Pittsburgh with a large quantity of heroin in his possession. These corroborative statements, however, fail to provide the magistrate with "specific facts or circumstances tending to demonstrate that the informant in the instance in question, has gathered his information in a reliable manner." *United States v. Chavez*, 482 F.2d 1268, 1270 [5th Cir. 1973].

■ We cannot accept the government's argument that Source's information carried a declaration against penal interest which is an indicia of reliability, see *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 [1971]; see also *United States v. Thompson*, 161 U.S.App.D.C. 339, 495 F.2d 165 [1974]; *United States v. Barfield*, 507 F.2d 53 [5th Cir. 1975]. This argument is not applicable here because a necessary element of a declaration against penal interest is absent here, in that the police to whom this Source made his statement did not know the identity of Source who, therefore, did not endanger himself by his statement. Nevertheless, it is arguable that from the details of the information the Source might have been identified, either by the police or by the defendant, to his peril.

■ Ultimately it is the reliability of the information supplied by the Source on which we must make our determination. A strong indication of its reliability is the very extensive details which it recites. These underlying facts and circumstances are set forth in such detail that they must necessarily come from the personal knowledge and observation of the Source. It, therefore, meets the first prong of the *Aguilar* test. We conclude that the extensive details of the Source's information also leads to a conclusion that his information is reliable. In addition to this factor we do find some support for a determination of Source's reliability from the hearsay statements given by Informants numbered I and II. We believe that the independent verification mentioned in *Spinelli*, supra, is supplied by Informants I and II, although neither of the stories related by Informants I and II would independently meet the *Aguilar* test.

While defendant criticizes the government's attempt to add three independent, yet individually insufficient, sources together to result in probable cause, and argues that the government fails to cite authority for its doing so, the defendant likewise fails to provide specific authority stating it cannot be done. We find the most significant authority in *Spinelli*:

"The informer's report must first be measured against *Aguilar's* standards so

that its probative value can be assessed. If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: *Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration?* . . . A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar's* requirements when standing alone." (emphasis supplied) pp. 415–416, 89 S.Ct. p. 588–589.

This quote, general though it may be, directs us in precisely the present situation. "If the tip is found inadequate under *Aguilar*", then it should not be simply discarded but "the other allegations which corroborate the information contained in the hearsay report should then be considered." Then, considering all of this information *together*, the court must consider whether *Aguilar* is now satisfied. The affidavit with the independent partial corroboration, must rise to the same level of probable cause as is required in all cases under *Aguilar* and which would, ordinarily perhaps, be found in one informer's tip alone.

Nothing in *Spinelli* states that these corroborating facts cannot be based on hearsay themselves. The governing principle is simply that probable cause must be determined by a "neutral and detached magistrate" and not by "the officer engaged in the often competitive enterprise of ferreting out crime." *Spinelli*, p. 415, 89 S.Ct. p. 589. The government is entitled to rely on the totality of the information presented in the warrant. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 [1971].

We believe that it is more important to examine what the court did in *Aguilar* and *Spinelli* than it is to analyze what the court said. Certainly, the actual affidavit in this case is far more detailed as to facts and circumstances relating to reliability than the bare statements of the affidavits in *Aguilar* and *Spinelli* which were rejected. The *Spinelli* affidavit failed because there was no independent allegation in the other parts to support the information supplied by the anonymous tipster. In addition we may compare the present affidavit with those upheld in *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 [1971], and *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 [1960]. The *Jones* affidavit which was held sufficient related simply that the police received information that the persons were engaged in the narcotic trade, had a ready supply of heroin on hand, and that the Source on many occasions had purchased narcotics at the residence of defendant where the drugs were secreted and the last such purchase was on the date of the affidavit. This was the tip of an unidentified informant. Considering the affidavit in *Jones* and the affidavit in the case before it, the Supreme Court said in *United States v. Harris*, 403 U.S. 573, at 579, 91 S.Ct. 2075, at 2080–2081, 29 L.Ed.2d 723:

Both [*Jones* and *Harris*] recount personal and recent observations by an unidentified informant of criminal activity, factors showing that the information had been gained in a reliable manner, and serving to distinguish both tips from that held insufficient in *Spinelli, supra*, in which the affidavit failed to explain how the informant came by his information.

In both *Jones* and *Harris* there was no independent outside corroboration of reliability, the reliability was found in the details of the story given and in the obvious personal knowledge of the informant of the matters which he recounted.

In *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 [1959], the plethora of detail which gave reliability to the informant was simply advice as to the description, dress, gait and luggage of a person who would be arriving on a certain

train, all innocent details that could be observed by any observer.

In *United States v. McNally*, 473 F.2d 934 [3rd Cir. 1973], the court analyzed the *Aguilar* and *Spinelli* requirements and found:

"Thus, the material outside the tip could be used to support a magistrate's conclusion both that the informer had a reasonable and legitimate basis for his statement that linked defendant to criminal activity and that the police had reason to credit the informer". (p. 938).

\* \* \* \* \* \*

"Further, the *Spinelli* opinion does not rule out completely the use of a tip that does not meet the *Aguilar* standards. Rather it permits the use of a tip not meeting the *Aguilar* standards, if there are, in the affidavit, other indicia of criminal activity. Thus, a determination of probable cause resting on a tip plus other non-innocent conduct is proper, even if use of the tip, were it the only basis for a finding of probable cause, would be improper."

\* \* \* \* \* \*

"Thus, the tip and the other independently suspect activity must be examined and, if together they establish probable cause, then the search warrant was properly issued." (p. 939).

■ The defendant attacks the affidavit as stating misrepresentations of fact. A facially sufficient affidavit, if it contains misrepresentations of fact, may lead to invalidating an order based on the affidavit, *United States v. Hunt*, 496 F.2d 888 [5th Cir. 1974]; *United States v. Carmichael*, 489 F.2d 983 [7th Cir. 1973] (en banc). As stated by *United States v. Armocida*, 515 F.2d 29, 41 [3rd Cir. 1975], two standards have been set forth by Circuit Courts as to what preliminary showing is necessary before defendant is entitled to a hearing. In *United States v. Carmichael*, 489 F.2d 983 at 988–89, and *United States v. Marihart*, 492 F.2d 897, 900 [8th Cir. 1974], cert. denied, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51, defendant must make an initial showing that (1) the government agent intentionally misrep-

resented a fact, whether or not material; or (2) the government agent was reckless and misrepresented a material fact.

Alternatively, *United States v. Thomas*, 489 F.2d 664 [5th Cir. 1973], holds an affidavit is invalidated if (1) the government agent intentionally misrepresented a fact, whether or not material. (This is the same as the first test in *Carmichael* and *Marihart*, supra), or (2) the error was nonintentional, but is material to the establishment of probable cause.

■ Defendant's assertion in his brief, taking it as true, that the defendant was not in Los Angeles at any time, does not satisfy either of these standards. At best it shows that the affidavit is erroneous in that the information given by the affiant is not accurate. However, it fails to show any misrepresentation by affiant, intentional or unintentional, of any fact as known to him. That is, it may show that the informant's tip was mistaken or deliberately falsified, but it shows no variance between what the police officer had been told by the informants and what he reported in his affidavit. *Carmichael*, supra, at p. 989, holding that:

"Consequently, defendant may not challenge the *truth* of hearsay evidence reported by an affiant. He may, after a proper showing, challenge any statements based on the affiant's personal knowledge, including his representations concerning the informer's reliability, his representation that the hearsay statements were actually made, and his implied representation that he believes the hearsay to be true." (emphasis supplied).

Naturally, it may be difficult or impossible for defense counsel to make a showing of this type prior to the grant of a hearing where he has the opportunity to cross-examine affiant, but it may be that circumstances and information would develop at trial that would justify a hearing at a later time. See also, A.L.I., Model for Pre-Arraignment Procedure, Official Draft No. 1 (July 15, 1972), Section SS290.2(1), quoted in *Carmichael*, supra, and providing in substance, that a hearing need not be held

except upon a showing, supported by affidavit, of a substantial basis for questioning the good faith of the testimony.

A different situation would be presented if defense counsel could develop, in the course of trial or otherwise, the existence of facts contradictory to the affidavit, which were known or probably known by the affiant. Such a preliminary showing would raise some question of good faith or deliberate misrepresentation by the affiant, justifying the need of a hearing. However, the present allegation falls short of this.

### ORDER

NOW, this 27th day of October, 1976, after hearing thereon, the Motion of Defendant to Suppress is DENIED.