## STATE v. GREGORY C. NOLTING.

254 N. W. 2d 340.

April 1, 1977—No. 46685.

*Goldberg, Torgerson, Brewer & Kellum* and *Steven H. Goldberg,* for appellant.

*Warren Spannaus,* Attorney General, and *Julius E. Gernes,* County Attorney, for respondent.

Considered and decided by the court without oral argument.

KELLY, JUSTICE.

After a trial without a jury defendant was found guilty in district court of charges of possessing marijuana in violation of Minn. St. 152.09, subd. 1(2), and of possessing marijuana with intent to sell in violation of Minn. St. 152.09, subd. 1(1). The trial court sentenced defendant on the latter offense to a maximum term of 5 years in prison but stayed execution of sentence pending defendant's appeal. The evidence on which defendant was convicted was the fruit of a search, pursuant to a warrant, of a first-class parcel sent to defendant's address from someone in Arizona. We conclude that this search comported with defendant's Fourth Amendment rights and thus affirm the conviction.

On March 9, 1975, Agent Paul Gerber of the Minnesota Bureau of Criminal Apprehension applied for a warrant authorizing the search of "[a] first class, Air Mail parcel, wrapped in brown paper, the sendor shown as 1946 East Helen, 85719, addressed to William Phelps, c/o Greg Nolting, Apt. 34, 302 W 4th St., Winona, Minn. 55987." The affidavit in support of the application stated:

"That your affiant, Paul N. Gerber, is a duly appointed Investigator for the Minnesota Bureau of Criminal Apprehension assigned to investigations involving violations of the 'Controlled Substances' Act. That on March 6, 1975, Postal Inspector Darrell Reed, Mankato, Minnesota, contacted me and advised that a package was inbound for Winona, Minnesota from Tucson, Arizona which postal authorities there suspected to contain controlled substances. I requested that the package be routed in such a way that I might attempt an inspection under the authority of a search warrant. The package in question arrived on Saturday,

March 8, 1975 and I was advised that the parcel was found in the Tucson, Arizona Post Office by Air Mail Clerk George Polenski, who has discovered *numerous* parcels of this type containing controlled substances. Your affiant has received similar investigations in the past where postal employees discover these parcels based on their appearance and general handling. Further investigation by Postal Inspector Darrell Reed disclosed that the address given the sendor is fictitious which is customarily the case in investigations of this type. That inquiry was made with Deputy Detective Richard Steeler, Freeborne County Sheriffs Office, who advised that the addressee, Greg Nolting is known to him and that he has received information that Greg Nolting is involved in the illicit handling of controlled substances and based on these aforementioned grounds your affiant has reason to believe and does believe that the package in question contains that which offends the law."

On the basis of this affidavit a search warrant was issued by a district court judge other than the trial judge. Officers executing the warrant found six compressed bricks of marijuana in the package.

A controlled delivery was made to defendant the following day, and a search, also pursuant to warrant, was thereafter made of defendant's apartment. Defendant was arrested and confessed his guilt. The admissibility of the evidence found in the search and of defendant's confession depend entirely on whether the search of the package was proper under the Fourth Amendment. Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. ed. 2d 441 (1963). The trial court ruled that the search was legal.

The United States Supreme Court has established standards to gauge the sufficiency of an affidavit offered in support of a search-warrant application. Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. 2d 723 (1964); Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L. ed. 2d 637 (1969); United States v. Harris, 403 U. S. 573, 91 S. Ct. 2075, 29 L. ed. 2d 723

(1971). Hearsay information contained in an affidavit must satisfy a two-pronged test originally advanced in Aguilar and expressed in State v. LaBarre, 292 Minn. 228, 235, 195 N. W. 2d 435, 440 (1972): "* * * [T]he affidavit [must contain] the underlying facts and circumstances to enable the magistrate to independently judge (1) that the informant obtained his knowledge of the reported criminal activity in a reliable manner; and (2) that the officer-affiant had a sufficient basis to believe that the informant was 'credible' or his information 'reliable.' " Both prongs of the Aguilar test are met here with respect to the information supplied by the mail clerk in Tucson, who originally stopped the package.[1] Defendant contends, however, that the affidavit failed to set forth sufficient facts to enable a magistrate to make an independent determination that probable cause existed.

The prime function of the warrant requirement is the interposition of a judicial officer between a police officer and the object of his investigation. The design of this structure is to require an independent assessment of the inferences to be drawn from the available evidence and thereby to secure the people from unreasonable searches and seizures. The United States Supreme Court noted in Aguilar:

"An evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants * * * are to be preferred over the hurried action of officers

---

[1] It is evident from the affidavit that the mail clerk learned of the package's type by personally observing it. Personal observation is a reliable manner of obtaining information. E. g., United States v. Cutts, 535 F. 2d 1083 (8 Cir. 1976). Nor does defendant give us reason to doubt the credibility of the mail clerk, an "ordinary citizen," who is identified in the affidavit and who was reporting information within the scope of his government employment. E. g., State v. Cox, 294 Minn. 252, 254, note 1, 200 N. W. 2d 305, 307 (1972); People v. Glaubman, 175 Colo. 41, 485 P. 2d 711 (1971). See, United States v. Harris, 403 U. S. 573, 599, 91 S. Ct. 2075, 2089, 29 L. ed. 2d 723, 743 (1971) (dissenting opinion).

\* \* \* who may happen to make arrests.' \* \* \* The reasons for this rule go to the foundations of the Fourth Amendment. \* \* \* 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' " 378 U. S. 110, 84 S. Ct. 1512, 12 L. ed. 2d 726.

Accord, United States v. United States District Court, 407 U. S. 297, 316, 92 S. Ct. 2125, 2136, 32 L. ed. 2d 752, 765 (1972). We bear in mind the function of the magistrate when we examine the affidavit before us, but we also heed other words from that passage in Aguilar: "[W]hen a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant \* \* \*.' " 378 U. S. 111, 84 S. Ct. 1512, 12 L. ed. 2d 726.

The affidavit in question is characterized as conclusory in so far as it asserts the package was similar to others without delineating the similarities. It relates that the mail clerk "has discovered *numerous* parcels of this type containing controlled substances." Viewing the affidavit in a commonsense fashion rather than regarding it as a pleading,[2] the meaning conveyed by "parcels of this type" is that the package in question looked like other packages that contained controlled substances. While this statement is conclusory in form, we think it does not usurp the magistrate's function in this case. All statements regarding the sensible world are conclusory to some extent, since in stating something about the world one draws inferences from sensory

---

[2] United States v. Ventresca, 380 U. S. 102, 108, 85 S. Ct. 741, 746, 13 L. ed. 2d 684, 689 (1965); State v. Wiley, 295 Minn. 411, 417, 205 N. W. 2d 667, 673 (1973).

impressions. Thus, the mere form of the affidavit is unobjectionable. Instead, the particular conclusion must be examined.

The conclusion drawn by the mail clerk is a simple one, drawn directly from his personal sensory experience. It is the kind of conclusion that courts and juries may legitimately credit in resolving factual questions.[3] Moreover, the mail clerk may be said to be something of an expert with respect to parcels and their appearance. As indicated in the affidavit, in the past he had been able to select those packages that appeared suspicious. Apparently this method is fairly common. Thus, he had the experience, if such was necessary, to remark on the similarity of the packages. If the affidavit had set forth the respects in which the parcel resembled the earlier packages,[4] the magistrate might

---

[3] For example, a witness may identify a suspect even though he can not recall the specific features of his face or person, State v. Sutton, 272 Minn. 399, 138 N. W. 2d 46 (1965); or testify that an individual staggered and slurred his speech to show intoxication, State v. Hicks, 301 Minn. 350, 222 N. W. 2d 345 (1974); or testify as to the speed of an automobile, Daugherty v. May Brothers Co. 265 Minn. 310, 121 N. W. 2d 594 (1963); or testify as to the mental condition of testator, In re Estate of Jenks, 291 Minn. 138, 189 N. W. 2d 695 (1971). See, also, Rule 701, Federal Rules of Evidence. These examples are weighty here, since they are admissible evidence, while evidence cognizable in a probable cause determination need not be admissible in a trial. E. g., United States v. Ventresca, 380 U. S. 102, 107, 85 S. Ct. 741, 745, 13 L. ed. 2d 684, 688 (1965).

[4] At a hearing before the trial court, the similarities between the parcels were identified. They included the same type of felt-pen handwriting on the packages, use of $1 Eugene O'Neill commemorative stamps, identically sized boxes, and similar wrapping. Since this information was not presented to the judge issuing the warrant, it is immaterial to the determination of whether probable cause existed which would justify issuance of a warrant. Whiteley v. Warden, Wyo. State Penitentiary, 401 U. S. 560, 565, note 8, 91 S. Ct. 1031, 1035, 28 L. ed. 2d 306, 311 (1971). See, Stone v. Powell, 428 U. S. 465, 473, 96 S. Ct. 3037, 3041, note 3, 49 L. ed. 2d 1069, 1075 (1976); and 428 U. S. 531, 96 S. Ct. 3069, 49 L. ed. 2d 1110 (dissenting opinion).

have been more certain of the clerk's conclusion. But we think detailing the basis of this conclusion, while desirable, goes to its probative value to establish probable cause and not to whether the conclusion can be considered by a magistrate. A magistrate would still have inferences to assess if some weight was given this conclusion.[5]

Although it is a close question, the affidavit advances sufficient facts to establish probable cause. The statement that the package had a fictitious return address bolsters the inference to be drawn from the mail clerk's conclusion (and indirectly the conclusion itself). The reputation of the defendant should also be given some weight even though his reputation with a county sheriff's office for involvement in the illicit handling of controlled substances standing alone would not be sufficient to establish probable cause. Nathanson v. United States, 290 U. S. 41, 54 S. Ct. 11, 78 L. ed. 159 (1933). However, where it is supported by other information, it may result in establishing probable cause. In United States v. Harris, 403 U. S. 573, 583, 91 S. Ct. 2075, 2081, 29 L. ed. 2d 723, 733 (1971), Mr. Chief Justice Burger said:

"We cannot conclude that a policeman's knowledge of a suspect's reputation—something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice Frankfurter—is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that *Spinelli* prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation."

---

[5] The conclusions in the affidavit or complaint concerned the ultimate issue of the existence of probable cause in Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. 2d 723 (1964); Giordenello v. United States, 357 U. S. 480, 78 S. Ct. 1245, 2 L. ed. 2d 1503 (1958); and Nathanson v. United States, 290 U. S. 41, 54 S. Ct. 11, 78 L. ed. 159 (1933).

Although in Harris the use of the defendant's reputation was said to be permissible in assessing the reliability of an informant's tip, there is no logical reason for not permitting the use of such probative information in establishing probable cause.[6]

When viewed together, the detection of the package by the mail clerk, the clerk's erroneous statement that the return address was fictitious, and the reputation evidence provide reasonable grounds for the belief that the package contained a controlled substance. A necessary element in our finding is that the officer procured a warrant from a judicial officer before searching the package.[7] Therefore, the affidavit was facially sufficient to establish probable cause.

---

[6] It is difficult to determine from the decision in Harris the number of justices who joined in the use of the reputation evidence. Thus, Mr. Justice Stewart joined in Part I of the plurality opinion which contained a reference to the affiant officer's knowledge of the defendant's background. Mr. Justice White concluded that the affidavit as a whole supported probable cause. It might be argued that because the affidavit contained reputation evidence, he may have given that facet of it some weight. However, neither Mr. Justice Stewart nor Mr. Justice White specifically concurred in Part II of the opinion which embodied the discussion of reputation evidence, among other things. Thus, three members of the court concurred in the plurality opinion generally, and two arguably concurred as to the use of reputation evidence.

[7] The securing of a warrant may tip the scales in doubtful cases. United States v. Ventresca, 380 U. S. 102, 109, 85 S. Ct. 741, 746, 13 L. ed. 2d 684, 689 (1965); Aguilar v. Texas, 378 U. S. 108, 111, 84 S. Ct. 1509, 1512, 12 L. ed. 2d 723, 726 (1964). The reason for this result is the desire not to deter police officers from obtaining warrants.

Another ground for this result may lie in the characterization of the exclusionary rule as being directed at *police* misconduct. E. g., United States v. Calandra, 414 U. S. 338, 347, 94 S. Ct. 613, 619, 38 L. ed. 2d 561, 571 (1974). Little more can be expected of a police officer who gathers evidence, presents it to a magistrate, and receives a warrant. Stone v. Powell, 428 U. S. 465, 496, 96 S. Ct. 3037, 3053, 49 L. ed. 2d 1067, 1090 (1976) (Burger, C. J., concurring). If Fourth Amendment rights are violated by the resulting search, the fault lies in large part with the judiciary since refusal to issue the warrant presumably would compel the officer to gather more evidence before a search was conducted. In the

We cannot help but remark on the facts of United States v. Van Leeuwen, 397 U. S. 249, 90 S. Ct. 1029, 25 L. ed. 2d 282 (1970), even though the decision does not directly support our conclusion. There, the defendant mailed two 12-pound packages at a post office in Washington some 60 miles from the Canadian

---

present case such evidence was apparently available. See footnote 4, *supra*. Because judges may disagree about the existence of probable cause, it is difficult to fault an officer in close cases for not realizing that his investigation has not yet yielded probable cause. Stone v. Powell, 428 U. S. 465, 539, 96 S. Ct. 3037, 3073, 49 L. ed. 2d 1067, 1114 (White, J., dissenting). A police officer's reliance is especially justified where, as here, a judge of long experience deems the affidavit sufficient. Application of the exclusionary rule in such a context would do little to deter police misconduct. But cf. United States v. Karathanos, 531 F. 2d 26, 32 (2 Cir. 1976), certiorari denied, 428 U. S. 910, 96 S. Ct. 3221, 49 L. ed. 2d 1217 (1976) (rejecting government suggestion that exclusionary rule should not apply if officers obtain a warrant).

We note that recently the United States Supreme Court has expressed some disenchantment with the exclusionary rule. Mr. Justice White observed in his dissent in Stone v. Powell, *supra*: "I feel constrained to say, however, that I would join four or more other Justices in substantially limiting the reach of the exclusionary rule as presently administered under the Fourth Amendment in federal and state criminal trials.

\* \* \* \* \*

"The rule has been much criticized and suggestions have been made that it should be wholly abolished, but I would overrule neither *Weeks v. United States* nor *Mapp v. Ohio*. I am nevertheless of the view that the rule should be substantially modified so as to prevent its application in those many circumstances where the evidence at issue was seized by an officer acting in the good-faith belief that his conduct comported with existing law and having reasonable grounds for this belief. These are recurring situations; and recurringly evidence is excluded without any realistic expectation that its exclusion will contribute in the slightest to the purposes of the rule, even though the trial will be seriously affected or the indictment dismissed." 428 U. S. 537, 96 S. Ct. 3072, 49 L. ed. 2d 1113. Nevertheless, until the United States Supreme Court modifies or abrogates the exclusionary rule, we must, under Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. ed. 2d 1081 (1961), give it full force and effect in this court.

border. He declared their contents were coins. One package was addressed to a post office box in Van Nuys, California; the other, to a post office box in Nashville, Tennessee. The postal clerk informed a police officer who was present that he was suspicious about the packages. The officer noticed that the return address on the packages was a vacant housing area of a nearby junior college and that the defendant's car displayed British Columbia license plates. The customs bureau in Seattle was notified, and at 3 o'clock that afternoon, an hour and a half after the package was mailed, it learned that the addressee of one package was under investigation in Van Nuys for trafficking in illegal coins. The next morning Seattle customs learned from Nashville authorities that the second addressee was also being investigated for the same crime. Thereupon, a customs official applied for and received a warrant; the packages were opened, inspected, resealed, and returned to the mails. The court was faced with the question of whether detention of the first-class packages until a warrant was obtained violated the Fourth Amendment. Mr. Justice Douglas, writing for a unanimous court, found the detention in these circumstances constitutional:

"* * * Yet even first-class mail is not beyond the reach of all inspection; and the sole question here is whether the conditions for its detention and inspection had been satisfied. We think they had been.

"The nature and weight of the packages, the fictitious return address, and the British Columbia license plates of respondent who made the mailings in this border town certainly justified detention, without a warrant, while an investigation was made. The 'protective search for weapons' of a suspect which the Court approved in *Terry v. Ohio*, 392 U. S. 1, 20-27, even when probable cause for an arrest did not exist, went further than we need go here. The only thing done here on the basis of suspicion was detention of the packages. There was at that point no possible invasion of the right 'to be secure' in the 'persons, houses, papers, and effects' protected by the Fourth Amendment against 'unrea-

sonable searches and seizures.' Theoretically—and it is theory only that respondent has on his side—detention of mail could at some point become an unreasonable seizure of 'papers' or 'effects' within the meaning of the Fourth Amendment. Detention for 1 1/2 hours—from 1:30 p. m. to 3 p. m.—for an investigation certainly was not excessive; and *at the end of that time probable cause existed for believing that the California package was part of an illicit project. A warrant could have been obtained that day for the one package*; yet the mystery of the other package remained unsolved and federal officials in Tennessee could not be reached because of the time differential. *The next morning they were reached and it was learned that the second package was also probably part of an illicit project.* * * *

"No interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited. The significant Fourth Amendment interest was in the privacy of this first-class mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained." (Italics supplied.) 397 U. S. 252, 90 S. Ct. 1032, 25 L. ed. 2d 285.

In sustaining Van Leeuwen's conviction for illegally importing gold coins, the court did not pass on the sufficiency of the warrant authorizing search of the packages. Nevertheless, in dictum the Court did suggest that the customs officials had probable cause and could have obtained a warrant upon learning that the addressee in Van Nuys was under investigation for trafficking in illegal coins. This dictum, in view of the remarkable factual similarity between the cases, confirms our conclusion that probable cause existed in the instant case.

We should comment on the fact that the search-warrant affidavit contained a material misstatement of fact since in actuality the return address on the package was not fictitious. When the mail clerk noted the parcel's similarity to the other packages, he alerted the United States postal inspectors in Tucson. One of the inspectors had a clerk check the return address of the pack-

age, and she reported that there was no such address. The address she checked, however, was different from the return address on the package. This erroneous information was then transmitted to Agent Gerber. Defendant argues that the misstatement was reckless and therefore, since the misstatement was necessary to establish probable cause, the error requires invalidation of the warrant and the resulting search under the test advanced in United States v. Carmichael, 489 F. 2d 983 (7 Cir. 1973).

In State v. Luciow, 308 Minn. 6, 240 N. W. 2d 833 (1976), this court held that the defendant's prima-facie showing of material misrepresentation entitled him to challenge the validity of a facially sufficient affidavit at the omnibus hearing sanctioned by Rule 11, Rules of Criminal Procedure. But we did not establish a standard delineating the conditions under which inaccuracies in the supporting affidavits would vitiate a search warrant.

In anticipation of our decision in Luciow, the trial court conducted a hearing with respect to the misstatement in the affidavit. It found that the error was due to negligence in the office of the postal inspectors. We concur in this assessment. Negligent misrepresentation is thus attributable only to the postal employees and not to Agent Gerber, who submitted the affidavit.

Carmichael and its progeny examine the state of mind only of the "government agents whose affidavits or testimony are before the magistrate." 489 F. 2d 989. Accord, Mapp v. Warden, N. Y. State Correctional Institution, 531 F. 2d 1167, 1172 (2 Cir. 1976). The rationale for this result is that the Aguilar test adequately ensures the reliability of hearsay information. 489 F. 2d 989. We agree that in this case it is the state of mind of Agent Gerber that is material to the validity of the warrant. Since he had reason to rely on the trustworthiness of the mistaken information, he was innocent in stating that the package's return address was fictitious. An innocent misrepresentation of a material fact does not vitiate probable cause. "* * * [I]f the officer reasonably believes facts which facially indicate a crime

has been committed, then even if mistaken, he has probable cause for believing a crime had been committed." United States v. Marihart, 492 F. 2d 897, 900, note 4 (8 Cir.), certiorari denied, 419 U. S. 827, 95 S. Ct. 46, 42 L. ed. 2d 51 (1974). Accord, United States v. Carmichael, *supra*; United States v. Lee, 540 F. 2d 1205 (4 Cir.), certiorari denied, 429 U. S. 894, 97 S. Ct. 255, 50 L. ed. 2d 177 (1976); United States v. Luna, 525 F. 2d 4 (6 Cir. 1975), certiorari denied, 424 U. S. 965, 96 S. Ct. 1459, 47 L. ed. 2d 732 (1976); State v. Goodlow, 11 Wash. App. 533, 523 P. 2d 1204 (1974). But see, United States v. Thomas, 489 F. 2d 664 (5 Cir. 1973); State v. Boyd, 224 N. W. 2d 609 (Iowa 1974). Therefore, defendant's conviction must be affirmed.

Affirmed.