*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1761**

State of Minnesota,
Respondent,

vs.

Wayne Joseph Simonson,
Appellant.

**Filed October 26, 2015
Affirmed
Larkin, Judge**

Goodhue County District Court
File No. 25-CR-13-2430

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Stephen N. Betcher, Goodhue County Attorney, Stephen F. O'Keefe, Assistant County Attorney, Red Wing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Peterson, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of third-degree controlled-substance crime (possession), which stems from a warranted search of his home. He argues that the warrant did not establish probable cause to search his home for controlled substances. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Wayne Joseph Simonson with third-degree controlled-substance crime and possession of drug paraphernalia. The complaint alleged that police executed a search warrant at Simonson's residence on October 23, 2013 and found methamphetamine inside a black leather zip pouch, which was inside a lunch box that was sitting on a chair in a bedroom, and inside a NAPA headlight box on a stand next to the bed. The complaint further alleged that the police found a glass pipe containing methamphetamine.

Simonson moved to suppress the drugs and paraphernalia, arguing that the affidavit in support of the search warrant failed to establish a connection between his residence and any alleged drug activity, failed to identify a timeframe during which alleged drug sales took place, and lacked "factual details or corroborative information that would permit the issuing judge to independently evaluate the investigator's conclusion that evidence of drugs or drug activity would be found at [Simonson's] residence." Simonson informed the district court that there was "no need for an evidentiary hearing" because he did not contend that the warrant was improperly

executed. The district court reviewed the search-warrant affidavit, concluded that it established probable cause to search Simonson's residence, and denied his motion to suppress.

A jury found Simonson guilty, and the district court sentenced him to serve 51 months in prison for the third-degree controlled-substance crime. This appeal follows.

**D E C I S I O N**

The United States and Minnesota Constitutions provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Generally, a search is lawful only if it is executed pursuant to a valid search warrant issued by a neutral and detached magistrate after a finding of probable cause. *See* Minn. Stat. § 626.08 (2012); *State v. Harris*, 589 N.W.2d 782, 787 (Minn. 1999). "When determining whether a search warrant is supported by probable cause, we do not engage in a de novo review." *State v. McGrath*, 706 N.W.2d 532, 539 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). Instead, "great deference must be given to the issuing [magistrate's] determination of probable cause." *State v. Valento*, 405 N.W.2d 914, 918 (Minn. App. 1987). When reviewing a decision to issue a search warrant, we limit our review to whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014).

To determine whether the issuing magistrate had a substantial basis for finding probable cause, we look to the "totality of the circumstances." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). In reviewing the sufficiency of a search-warrant affidavit under the totality-of-the-circumstances test, "courts must be careful not to review each component of the affidavit in isolation." *Id*. "[A] collection of pieces of information that would not be substantial alone can combine to create sufficient probable cause." *State v. Jones*, 678 N.W.2d 1, 11 (Minn. 2004). "Furthermore, the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *Wiley*, 366 N.W.2d at 268 (quotation omitted).

In this case, the circumstances set forth in the affidavit are as follows. On October 16, 2013, a confidential reliable informant (CRI), who Goodhue County Deputy Jonathan Huneke had been working with for a month, contacted Deputy Huneke and told him that T.C. had a stolen Harley Davidson motorcycle. The CRI told Deputy Huneke that the CRI could arrange to purchase the stolen motorcycle from T.C. for $1,000. The CRI also arranged to purchase one ounce of methamphetamine from T.C. for $1,300.

On October 17, Deputy Huneke gave the CRI $1,000 to purchase the motorcycle and $1,300 to purchase the methamphetamine. He also fitted the CRI with a transmitter to record the purchase. The CRI met with T.C. and T.C.'s wife, and Deputy Huneke listened to the meeting via the transmitter. Deputy Huneke heard the CRI and T.C.

4

discuss a motorcycle, as well as where and when they would meet to deliver the motorcycle. After the meeting, the police stopped T.C. and his wife for a traffic violation, and they "were arrested for [first-degree] methamphetamine sales."

The next day, the CRI told Deputy Huneke that he had figured out where the stolen Harley was located and that the CRI had attempted to go to its location with an individual named R.S. On the way there, R.S. spoke to a person named "Wayne" over the phone. R.S. explained where Wayne lived, but R.S. turned the vehicle around before they got to Wayne's residence. R.S. told the CRI that Wayne wanted more money from the CRI before he would release the motorcycle. R.S. told the CRI that T.C. owed Wayne money. R.S. also told the CRI that Wayne supplied methamphetamine to T.C. and his wife. Based on the CRI's description of the location of Wayne's home and a telephone number the CRI provided, Deputy Huneke determined that "Wayne" was appellant Wayne Joseph Simonson. Deputy Huneke drove by Simonson's home and observed a camper and a pickup truck in the driveway that matched descriptions the CRI had provided of T.C.'s camper and truck.

Later, the CRI told Deputy Huneke that the CRI had spoken directly with Simonson and that Simonson had agreed to let the CRI pick up the Harley. Simonson told the CRI that he supplied narcotics to T.C. and his wife. Simonson explained that T.C. owed Simonson money and that he was keeping or selling some of T.C.'s items to get his money back. Deputy Huneke followed the CRI to Simonson's house and watched the CRI load the Harley onto a trailer. Deputy Huneke matched the Harley's VIN

number to a stolen property report. Deputy Huneke noticed that the motorcycle's saddle bags were missing and part of the ignition was missing.

On October 21, Deputy Huneke received a forensic report from a phone that was seized from T.C. and his wife when they were arrested. Simonson's phone number was listed in the phone as "This one dude." The programmed ringtone for Simonson played this message: "Hello it is your drug dealer." Deputy Huneke checked Simonson's criminal history and learned that he had a 2006 conviction for second-degree possession of "cocaine/heroin/meth" and a 2006 conviction for first-degree sale of methamphetamine.

On October 22, a magistrate reviewed the information in the affidavit and authorized a warrant to search Simonson's residence for, among other things, a license plate from the stolen Harley, all documents contained in the saddle bags including insurance and registration information, any parts or items removed from the Harley, controlled substances including methamphetamine, paraphernalia, and records and papers relating to the purchase or distribution of methamphetamine or other controlled substances.

Simonson argues that "the information in the warrant application did not establish a nexus between controlled substances and [his] home because none of the allegations in the application concerned drugs in or around [his] home."

> Probable cause not only requires that the evidence sought likely exists, but also that there is a fair probability that the evidence will be found at the specific site to be searched. A sufficient "nexus" must be established between the evidence sought and the place to be searched. However,

6

> direct observation of evidence of a crime at the place to be searched is not required. A nexus may be inferred from the totality of the circumstances.

*Yarbrough*, 841 N.W.2d at 622 (citations omitted). Among the circumstances considered are "the type of crime involved, the nature of the items sought, the extent of an opportunity for concealment, and reasonable assumptions about where a suspect would likely keep that evidence." *State v. Ruoho*, 685 N.W.2d 451, 456 (Minn. App. 2004), *review denied* (Minn. Nov. 16, 2004).

The allegations regarding drugs in the affidavit included a controlled buy from T.C. and his wife to the CRI, the arrest of T.C. and his wife for the sale of methamphetamine, R.S.'s report that Simonson supplied methamphetamine to T.C. and his wife, Simonson's admissions that he supplied narcotics to T.C. and his wife, T.C.'s ringtone corroborating that Simonson supplied T.C. with drugs, and Simonson's criminal record. Moreover, the controlled buy of methamphetamine from T.C. and his wife to the CRI occurred on October 17. The search warrant was issued on October 22. Both R.S. and Simonson told the CRI that Simonson supplied T.C. and his wife with narcotics. A camper and truck reportedly belonging to T.C. and his wife were parked on Simonson's property. And Simonson has a history of controlled-substance convictions, including sale of methamphetamine. Under the circumstances, it is reasonable to infer that T.C. and his wife recently obtained methamphetamine from Simonson at his property and that there would be more methamphetamine on his property. *See Yarbrough*, 841 N.W.2d at 623 (stating that "[i]t may be reasonable to infer that drug wholesalers keep drugs at their residences").

7

Even if it were doubtful that the magistrate had a substantial basis for concluding that probable cause existed to search for controlled substances in Simonson's home, "the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *Wiley*, 366 N.W.2d at 268 (quotation omitted); *see also State v. Nolting*, 312 Minn. 449, 456, 254 N.W.2d 340, 345 n.7 (1977) ("The securing of a warrant may tip the scales in doubtful cases."). "The reason for this result is the desire not to deter police officers from obtaining warrants." *Nolting*, 312 Minn. at 456, 254 N.W.2d at 345 n.7. Given the great deference that must be given to the issuing magistrate's determination of probable cause and the preference to be accorded warrants, we affirm.

**Affirmed.**