STATE OF MINNESOTA

IN SUPREME COURT

A15-0938

Court of Appeals                                                                    Gildea, C.J.
                                                                    Dissenting, Stras, J.
                                                        Dissenting, Lillehaug, Hudson, JJ.

State of Minnesota,

                                    Respondent,

vs.
                                                                    Filed:  August 24, 2016
Debra Lee Fawcett,                                          Office of Appellate Courts

                                    Appellant.

                        _____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Kelsey R. Kelley, Assistant Anoka County Attorney, Anoka, Minnesota, for respondent.

Mark D. Nyvold, Fridley, Minnesota, for appellant.

                        _____

S Y L L A B U S

1.     The facts alleged in the warrant application and supporting affidavit provided probable cause to conclude that evidence of criminal vehicular operation would be found in appellant's blood.

2.     The search warrant satisfied the particularity requirement in the Fourth Amendment.

Affirmed.

1

O P I N I O N

GILDEA, Chief Justice.

The State charged appellant Debra Fawcett with criminal vehicular operation, Minn. Stat. § 609.21, subd. 1(2) (2012).[1] Fawcett moved to suppress "all evidence of the presence of drugs" found in her blood, arguing that the warrant application and supporting affidavit failed to provide a lawful basis to test her blood for controlled substances. The district court granted Fawcett's suppression motion. The State filed a pretrial appeal challenging the district court's suppression order. The court of appeals reversed. Because we conclude that the warrant application and supporting affidavit provided probable cause to believe that evidence of criminal vehicular operation would be found in Fawcett's blood and because the warrant satisfies the Particularity Clause in the Fourth Amendment, we affirm.

On May 24, 2014, Fawcett drove her car through a highway intersection on a red light causing a collision with a car driven by L.S. When police officers arrived at the scene, they observed that L.S. was bleeding and likely had a broken leg or ankle. As they waited for medical personnel to arrive, one of the officers spoke with Fawcett who had sustained minor injuries as a result of the crash. While interacting with Fawcett, the officers smelled alcohol on her breath, and Fawcett admitted that she had consumed "two

---

[1] In 2014, the Legislature renumbered section 609.21, subd. 1 (2012), to include Minn. Stat. § 609.2113, subd. 2(2). Act of Apr. 30, 2014, ch. 180, § 7, 2014 Minn. Laws 281, 285.

to three beers" earlier. When the medical personnel arrived at the scene, they placed Fawcett on a stretcher and transported her to Mercy Hospital.

Meanwhile, a police detective applied for a warrant to search a sample of Fawcett's blood for "evidence of the crime of criminal vehicular operation/homicide." The warrant application and supporting affidavit alleged the following facts. At approximately 5:08 p.m. on May 24, 2014, officers from the Blaine Police Department responded to a motor vehicle crash at Highway 65 and 109th Avenue in the City of Blaine, Anoka County. One or more persons suffered bodily harm as a result of the crash, including "significant foot and ankle injuries and inability to move their leg[s]." "The victim and several witnesses placed Fawcett behind the wheel of a vehicle that ran a red light. Fawcett admitted to the officers that she was driving and had been drinking prior to the crash." "From their investigation, officers formed the belief that at the time of the collision . . . Fawcett was the driver and was under the influence of alcohol." "Fawcett admitted to responding officers that she had two or three drinks just prior to the crash, she smelled of an alcoholic beverage and it was apparent to officers on-scene that she had been drinking." Based on the above-described facts, the detective sought "a blood sample of [Fawcett] as evidence of the crime of criminal vehicular operation/homicide."

Incorporating the detective's application and affidavit into the warrant by reference, the issuing judge found "probable cause exists for the issuance of a search warrant upon the following grounds: The property above-described constitutes evidence which tends to show a crime has been committed, or tends to show that a particular

3

person has committed a crime." The issuing judge also found that "due to the dissipation of alcohol/drugs in the human body this warrant may be served at anytime during the day or night." Based on these findings, the judge issued a warrant that authorized the executing peace officer to "[c]ause a blood sample to be taken from [Fawcett] at Mercy Hospital" and "[f]orward said blood sample to an approved lab for testing."

When the police detective arrived at the hospital with the signed warrant, Fawcett took a preliminary breath test ("PBT") and a medical professional conducted a blood draw. The result of the PBT was a reading of .000. After the PBT, Fawcett told the officers that she was depressed and was currently taking Lorazepam and Wellbutrin.

One month later, on June 24, 2014, the police detective received a Bureau of Criminal Apprehension ("BCA") report that stated that there was no ethyl alcohol in Fawcett's blood sample. The report noted that "additional toxicology report(s) [would] follow." The detective received a second BCA report on September 9, 2014. It indicated that Fawcett's blood contained a metabolite of tetrahydrocannabinol (THC) and Alprazolam at the time of the accident.

On October 16, 2014, the State filed a complaint against Fawcett alleging that she had committed criminal vehicular operation in violation of Minn. Stat. § 609.21, subd. 1(2)(ii) (2012). This statute makes it a crime to cause injury to another while operating a motor vehicle in a negligent manner while under the influence of a controlled substance.

Fawcett moved to suppress "all evidence of the presence of drugs," arguing that the warrant application did not provide any basis for police to test her blood for

4

controlled substances. The district court granted Fawcett's suppression motion. Although the court determined that the blood sample was lawfully obtained under the warrant, it concluded that the subsequent testing of the blood sample for the presence of drugs was unlawful. As part of its analysis, the court said, tests of Fawcett's blood were "limited in scope to the probable cause presented in the application and affidavit, namely, a search of [Fawcett's] blood to obtain evidence of alcohol use."

The State filed a pretrial appeal of the suppression order under Minn. R. Crim. P. 28.04, subd. 1(1). In its statement of the case, the State asserted that the suppression order had a critical impact on its ability to prosecute because "[t]he test result demonstrating that [Fawcett's] blood sample contained a controlled substance constitutes all of the state's evidence to prove that [Fawcett] was under the influence of a controlled substance at the time of the crash."[2]

The court of appeals reversed the suppression order, holding that Fawcett did not "retain[] privacy interests in the contents of her lawfully obtained blood sample," so the subsequent chemical analysis for drugs was "not a distinct Fourth Amendment event." *State v. Fawcett*, 877 N.W.2d 555, 561-62 (Minn. App. 2016). We granted Fawcett's petition for review.

On appeal, Fawcett does not argue that there was police misconduct or that the police did anything improper in executing the warrant. Rather, she argues that the

---

[2] The parties do not contend that the critical impact test is not met in this appeal. We agree that the standard is met. *See State v. Stavish*, 868 N.W.2d 670, 674 (Minn. 2015) ("[C]ritical impact is established if the exclusion of evidence would prevent the State from successfully prosecuting one of the specific charges.").

warrant did not provide probable cause for the police to test her blood for controlled substances. Specifically, Fawcett notes that the warrant application sets forth the officer's belief that she was under the influence of alcohol but does not mention controlled substances. According to Fawcett, all of the facts alleged in the warrant application relate directly to alcohol intoxication and therefore the issuing magistrate was required to limit the testing to evidence of alcohol. Fawcett also argues that the warrant to search her blood was overbroad because it allowed the police to search for more than the warrant application would otherwise allow, and that therefore, the warrant runs afoul of the Particularity Clause in the Fourth Amendment. We address each argument in turn.[3]

## I.

We turn first to the question of whether the facts alleged in the warrant application and supporting affidavit supported testing Fawcett's blood for controlled substances. The

---

[3] Fawcett also argues that the court of appeals erred in concluding that once her blood was seized pursuant to a warrant, she no longer had an expectation of privacy in the blood. We agree with Fawcett that she did not lose all expectation of privacy in her blood that was seized pursuant to a warrant and that the court of appeals' rule is too broad. As the United States Supreme Court observed in *Skinner v. Ry. Labor Execs.' Ass'n.*, 489 U.S. 602, 617 (1989), chemical analysis of blood "can reveal a host of private medical facts . . . including whether [a person] is epileptic, pregnant, or diabetic." *See also Birchfield v. North Dakota*, ___ U.S. ___, ___, 136 S. Ct. 2160, 2177 (2016) (noting that blood contains "a wealth of . . . highly personal information."). At oral argument, the State did not defend the court of appeals' broad rule. Rather, the State contended that Fawcett lost her expectation of privacy in the information that could be gleaned from her blood sample through chemical testing of the blood. We need not resolve in this case the exact extent of the expectation of privacy Fawcett retained in her blood because, as explained below, we conclude that the warrant provided a valid basis for the controlled substance testing.

6

warrant authorized the police to seize Fawcett's blood and forward it "to an approved lab for testing." The warrant did not specify what type of testing the blood would undergo. Because the warrant application referenced only the influence of alcohol, Fawcett argues that the warrant application did not provide probable cause to test for controlled substances. We disagree.

When reviewing a judge's decision to issue a search warrant, our only consideration is whether the issuing judge "had a substantial basis for concluding that probable cause existed." *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001). Our review is limited to the information presented in the warrant application and supporting affidavit. *State v. Holland*, 865 N.W.2d 666, 673 (Minn. 2015). We must consider the totality of the circumstances alleged in the supporting affidavit and "must be careful not to review each component of the affidavit in isolation." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985). The task of the issuing judge is

> simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, *there is a fair probability that* contraband or *evidence of a crime will be found in a particular place*.

*State v. Jenkins*, 782 N.W.2d 211, 223 (Minn. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis added)). We defer to the issuing magistrate, recognizing that "doubtful or marginal cases should be 'largely determined by the preference to be accorded to warrants.' " *State v. McCloskey*, 453 N.W.2d 700, 704 (Minn. 1990) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006) ("[W]e give 'great deference to the issuing judge's

7

determination' of probable cause for a search warrant." (quoting *State v. Jones*, 678 N.W.2d 1, 11 (Minn. 2004))); *Rochefort*, 631 N.W.2d at 804 (same); *State v. Harris*, 589 N.W.2d 782, 791 (Minn. 1999) ("[T]he resolution of doubtful or marginal cases should be 'largely determined by the preference to be accorded warrants.'" (quoting *Wiley*, 366 N.W.2d at 268)).

Applying this well-established law to the facts of this case, we conclude that the facts alleged in the warrant application provided the issuing judge a substantial basis to conclude there was a fair probability that evidence of criminal vehicular operation would be found in Fawcett's blood. A person is guilty of criminal vehicular operation if the person causes injury to another as a result of operating a motor vehicle in a negligent manner while under the influence of: "(i) alcohol; (ii) a controlled substance; or (iii) any combination of those elements." Minn. Stat. § 609.21, subd. 1(2) (2012). Considering all the circumstances set forth in the warrant application and supporting affidavit, including L.S.'s visible injuries, the eyewitness's placement of Fawcett behind the wheel of a vehicle that ran a red light, the odor of alcohol on Fawcett's breath, the officers' conclusion that she had been drinking, and Fawcett's admission that she had been drinking prior to the crash, the issuing judge had a substantial basis to conclude there was a fair probability that evidence of intoxicants, whether alcohol, controlled substances, or a combination of alcohol and controlled substances would be found in Fawcett's blood.

We acknowledge that the warrant application and supporting affidavit states that "From their investigation, officers formed the belief that at the time of the collision . . . Fawcett was the driver and was under the influence of alcohol." But because the prime

function of the warrant requirement is to secure "an independent assessment of the inferences to be drawn from the available evidence," *see State v. Nolting*, 312 Minn. 449, 452, 254 N.W.2d 340, 343 (1977), it is axiomatic that an issuing judge is not bound by the inferences drawn by the officers. And the issuing judge is free "to draw such reasonable inferences as he will from the materials supplied to him by applicants for a warrant." *Gates*, 462 U.S. at 240.

From the warrant application, the issuing judge knew that it was "apparent" to the officers at the scene that Fawcett was under the influence, a conclusion based on the officers' investigation at the scene including what they saw and heard from Fawcett. Because it was "apparent" to those officers that Fawcett was impaired, it was not unreasonable for the issuing judge to infer that Fawcett's impairment may have been caused by alcohol, controlled substances, or some combination of the two. This is especially true when a warrant application "need not contain information providing certainty that the objects sought will be found as a result of the search." *United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir. 1977).

Given the deference that we afford issuing magistrates and considering the totality of the circumstances here, including the fact that Fawcett drove her car through a red light, causing an accident,[4] and that she appeared to the officers on the scene to be under

---

[4] Fawcett's driving conduct supports a finding of probable cause to believe she was under the influence of intoxicants. *See State v. Paul*, 548 N.W.2d 260, 264 (Minn. 1996) (explaining that the defendant's driving conduct, including rolling through several stop signs, supported a finding of probable cause to believe the defendant was under the influence of an intoxicant).

the influence, we cannot say that it was unreasonable for the issuing magistrate to choose not to limit the testing of Fawcett's blood to evidence of only one type of intoxicant—alcohol.[5]

## II.

We next turn to Fawcett's argument that the search authorized by the warrant was overbroad because it allegedly "failed to provide the safeguards that the Particularity Clause was intended to provide: prevent general searches, and assure the person being

---

[5]     The dissent contends that our conclusion is based solely on the supporting affidavit's statement that law enforcement sought "evidence of the crime of criminal vehicular operation/homicide," and therefore is contrary to existing precedent, including *Gates*, 462 U.S. at 239 and *State v. Souto*, 578 N.W.2d 744, 749 (Minn. 1998). *Infra* at D-5. We disagree. The cases cited by the dissent involve argumentative assertions that were not supported by *any* alleged facts. For example, in *Gates*, 462 U.S. at 239, the Court identified the following "bare bones" warrant affidavit as being too conclusory. "A sworn statement of an affiant that 'he has cause to suspect and does believe' that liquor illegally brought into the United States is located on certain premises." *Id.* at 239 (describing the affidavit in *Nathanson v. United States*, 290 U.S. 41 (1933)). The Court in *Gates* explained that the affiant needed to allege facts that would allow the magistrate to determine probable cause. *Gates*, 462 U.S. at 239. The Court went on to emphasize that "when we move beyond the 'bare bones' affidavits" a flexible common sense rule applies, which allows a "magistrate to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant." *Id.* at 239-40.

Similarly, in *Souto*, the issue was whether the affiant's statement that "he [knew] that Souto was involved in the possession and/or distribution of drugs on a wide scale was too vague and conclusory to bolster the state's position that Souto was a drug dealer." 578 N.W.2d at 749. We concluded that it was too vague because the officer failed to provide a detailed description of the information that led to such knowledge.

Our analysis is not based solely on the supporting affidavit's statement that law enforcement sought "evidence of the crime of criminal vehicular operation/homicide." Instead, it is based on specific facts, including the injuries, running of the red light, odor of alcohol, Fawcett's admission that she had been drinking, and the officers' belief that Fawcett was under the influence. Contrary to the dissent's assertion, our analysis is neither speculative nor inconsistent with existing precedent.

searched of the officer's lawful authority, the need to search, and the search's limits." According to Fawcett, the warrant's use of the phrase "[f]orward said sample to an approved lab for testing" allowed a general search of her blood, which she claims is particularly troubling in light of "[t]he ever-increasing knowledge about what blood contains—*e.g.*, DNA, indicators of diseases, conditions or exposure to certain substances, and the person's entire genome . . . ."

The Particularity Clause of the Fourth Amendment requires that a search warrant particularly describe the items to be seized. U.S. Const. amend. IV. "This requirement prohibits law enforcement from engaging in general or exploratory searches." *State v. Bradford*, 618 N.W.2d 782, 795 (Minn. 2000). The Supreme Court has recognized that "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). A court may, however, "construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id.* at 557-58. And "when determining whether a clause in a search warrant is sufficiently particular, the circumstances of the case must be considered, as well as the nature of the crime under investigation and whether a more precise description is possible under the circumstances." *State v. Miller*, 666 N.W.2d 703, 713 (Minn. 2003).

Applying these principles in *State v. Hannuksela*, we concluded that although "an authorization permitting search for items belonging to Arthur Nelson [was] somewhat vague," it "met minimal constitutional standards" because "the officers did not definitely

11

know all of the circumstances surrounding Nelson's disappearance although they were then in possession of sufficient facts to establish . . . that he was the victim of foul play and that appellant was involved." 452 N.W.2d 668, 674 (Minn. 1990). We reached a similar conclusion in *State v. Poole*, 499 N.W.2d 31, 34 (Minn. 1993) (concluding that an authorization permitting the search of "[c]omplete patient files of all females with dates of birth between January 1, 1965 and January 1, 1978 who saw Dr. Poole from January 1, 1987 to the present for any kind of family practice services" was sufficiently particular because "the nature of the activity under investigation did not permit investigative authorities complete knowledge of even the total number of victims").

Having considered the circumstances of the case, as well as the nature of the crime under investigation and whether a more precise description was possible under the circumstances, we conclude that the authorization to submit Fawcett's blood sample "to an approved lab for testing" meets minimal constitutional standards for particularity. Like the investigators in *Hannuksela* and *Poole*, the detective in this case was in possession of facts that established probable cause to believe evidence of criminal vehicular operation would be found in Fawcett's blood, although he did not know whether the intoxicant was alcohol, controlled substances, or a combination of alcohol and controlled substances. Moreover, by expressly incorporating the warrant application and supporting affidavit into the warrant, the issuing judge limited the search of Fawcett's blood to tests that would reveal "evidence of the crime of criminal vehicular operation/homicide." Under Minn. Stat. § 609.21, subd. 1(2) (2012), such evidence is narrowly limited to the presence of alcohol and/or controlled substances. Contrary to

12

Fawcett's assertion, the search warrant in this case did not authorize general testing of Fawcett's blood to determine her DNA, genome, or indicators of diseases because such testing would not have revealed any evidence of criminal vehicular operation/homicide. We therefore hold that the search warrant satisfies the Particularity Clause in the Fourth Amendment.

Affirmed.

DISSENT

STRAS, Justice (dissenting).

This case requires us to determine when, and under what circumstances, police officers have probable cause to perform a chemical test for the presence of controlled substances when they have reason to suspect a driver is under the influence of alcohol. Because the warrant application established probable cause only for the presence of alcohol in Debra Fawcett's blood, not the presence of a controlled substance, I respectfully dissent from the court's conclusion that the search conducted in this case was reasonable under the Fourth Amendment to the United States Constitution.

I.

By proceeding through a red light, Fawcett drove her vehicle into the path of L.S.'s vehicle. The two vehicles collided, which caused both drivers to sustain injuries. When police officers arrived on the scene and began questioning the participants and witnesses, one of the officers detected alcohol on Fawcett's breath. Fawcett admitted that she had consumed "two to three beers" earlier that day. While Fawcett was in the ambulance receiving treatment for her injuries, an officer recited the implied-consent advisory and asked her to take a test to determine if she was "under the influence of alcohol." He also informed her that he had probable cause to believe that she had "violated the criminal vehicular homicide or injury laws," which meant that a chemical test would be taken "with or without [her] consent." No chemical test was administered at that time.

After Fawcett was transported to the hospital, another officer completed an application for a search warrant accompanied by an affidavit. Nothing in the affidavit suggested that Fawcett was under the influence of anything other than alcohol. In fact, the affidavit specifically stated that "officers [had] formed the belief that . . . Fawcett was . . . under the influence of alcohol" because "Fawcett admitted to responding officers that she had two or three drinks just prior to the crash, she smelled of an alcoholic beverage[,] and it was apparent to officers on-scene that she had been drinking." The judge issued a warrant that allowed a "blood sample to be taken from [Fawcett] at Mercy Hospital" and forwarded "to an approved lab for testing." The warrant was silent on the specific types of tests that law enforcement could conduct on the blood sample.

One month later, the Bureau of Criminal Apprehension ("BCA") reported that there was no ethyl alcohol in Fawcett's blood sample, but that "additional toxicology report(s) [would] follow." A second BCA report indicated that Fawcett's blood sample contained Alprazolam, a prescription medication, and a metabolite of tetrahydrocannabinol ("THC"), an active ingredient of marijuana. An officer then obtained a search warrant for any records with the name "Debra Lee Fawcett" in Minnesota's Prescription Monitoring Program. The search revealed that Fawcett had a valid prescription for Alprazolam at the time of the accident.

The State subsequently filed a criminal complaint against Fawcett alleging that she had committed criminal vehicular operation. Minn. Stat. § 609.21, subd. 1(2)(ii) (2012) (making it a crime to cause injury to another while operating a motor vehicle in a negligent manner while under the influence of a controlled substance). The State's

theory of the case was that Fawcett's combined use of THC and Alprazolam, both controlled substances, violated the criminal-vehicular-operation statute.

After the State filed the complaint, Fawcett filed a motion to suppress "[a]ll evidence of the presence of drugs." The district court granted Fawcett's motion, concluding as relevant here that, under the Fourth Amendment, there was no probable cause to search Fawcett's blood for the presence of controlled substances. The court of appeals reversed, holding that Fawcett did not have a reasonable expectation of privacy in the contents of her blood sample after it was seized by law enforcement for testing under a search warrant. *State v. Fawcett*, 877 N.W.2d 555, 561-62 (Minn. App. 2016).

## II.

I agree with the court that a search warrant that authorizes law enforcement to seize and test a person's blood for intoxicants does not wipe out a person's reasonable expectation that law enforcement will not test the blood sample for other purposes. The permissible extent of the invasion is tied to the scope of the warrant. *See Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . , the subsequent seizure is unconstitutional without more.").[1]

---

[1]    For example, if a validly issued warrant permits the State to test a person's blood for the presence of alcohol, the State cannot unilaterally decide to test the blood sample in ways not contemplated by the warrant, such as testing for HIV or to establish a DNA profile for a criminal database. *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617 (1989) ("It is not disputed, however, that chemical analysis of urine, like that of blood, can reveal a host of private medical facts about [a person], including whether he or she is epileptic, pregnant, or diabetic."). This is a corollary of the principle that law enforcement

But I disagree with the court's conclusion that probable cause to search for alcohol in a driver's blood necessarily provides the police with probable cause to search for drugs. It is not clear how the court reaches this conclusion, other than the inferences *it* draws from the affidavit that lead *it* to conclude that the issuing judge must have found that there was probable cause to search for "intoxicants, whether alcohol, controlled substances, or a combination of alcohol and controlled substances."

The most serious problem with the court's conclusion is that the affidavit is devoid of specific facts that could have led the issuing judge to conclude that probable cause existed to test Fawcett's blood for the presence of controlled substances. Nothing about Fawcett's demeanor, actions, or words suggested that the accident occurred because she was under the influence of a controlled substance. The affidavit did not describe any abnormal physical characteristics, comment on Fawcett's ability to converse with the officers, or note any other behavior that would have given reason to believe that Fawcett was under the influence of another substance in addition to alcohol. To the contrary, two of the facts explicitly relied upon by this court—the smell of alcohol on Fawcett's breath and the admission that she had been drinking prior to the accident—point *exclusively* to alcohol as the cause of the accident. In fact, the affidavit specifically states that the

---

may not obtain a search warrant for a specified item and then search in places where the specified item cannot be found, such as looking for a stolen automobile in a suspect's closet. *See Coolidge v. New Hampshire*, 403 U.S. 443, 517 (1971) ("Police with a warrant for a rifle may search only places where rifles might be and must terminate the search once the rifle is found."); *see also United States v. Ross*, 456 U.S. 798, 824 (1982) ("[P]robable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom.").

"officers formed the belief" that Fawcett was "under the influence of alcohol" at the time of the collision.[2] The court asserts that the two remaining facts—the injuries suffered by L.S. and the observation that Fawcett ran a red light—support its conclusion that probable cause to search for controlled substances existed, but the court seems to assume the connection rather than explain it.[3]

The court also seems to suggest that the affidavit was sufficient because it stated that law enforcement sought "evidence of the crime of criminal vehicular operation/homicide," which can be committed when an individual is driving under the influence of alcohol, controlled substances, or both. *See* Minn. Stat. § 609.21, subd. 1(2) (2012). The fact that the affidavit generically references the suspected crime is of little

---

[2]      The court contends that the issuing judge is not bound by the inferences drawn by the officers, and as a result, it does not matter that the officers believed that Fawcett was only under the influence of alcohol at the time of the collision. It may be true that the issuing judge is not bound by the inferences of the officers, but the Fourth Amendment still requires the facts alleged in a search-warrant application to establish a fair probability that the evidence being sought will be found at a particular location. *See State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985). The court has not said why facts suggesting that Fawcett negligently operated her vehicle while under the influence of alcohol also provide reason to believe that controlled substances would be found in her blood. In essence, the court has reached the unsupported conclusion that, if there is a fair probability that a person has recently used alcohol, there is a fair probability that the person has used drugs as well.

[3]      The court relies on *State v. Paul*, 548 N.W.2d 260 (Minn. 1996), to support its view that Fawcett's driving conduct created probable cause to believe that she was under the influence of a controlled substance. This prototypical drunk-driving case, however, does not support the court's conclusion. There, we concluded, consistent with my view of the record in this case, that the suspect's erratic driving behavior, in combination with other observed facts such as the smell of alcohol on the suspect's breath, supported a finding of probable cause to test for *alcohol* intoxication. *See Paul*, 548 N.W.2d at 264. *Paul* simply does not mention or consider other intoxicating substances.

assistance, however, because it reflects only the legal conclusion of the officers and is therefore, at best, "vague and conclusory." *See State v. Souto*, 578 N.W.2d 744, 749 (Minn. 1998) (holding that the statement in an affidavit that the suspect was involved "in the possession and/or distribution of drugs on a wide scale" was too conclusory to provide support for a search warrant). As the Supreme Court has made clear, "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S 213, 239 (1983).

On this record, therefore, I would conclude that the search-warrant application and accompanying affidavit failed to establish probable cause for the search of Fawcett's blood for controlled substances. I therefore respectfully dissent from Part I of the court's opinion.

## III.

The court's faulty probable-cause analysis, however, may simply be a product of the arguments of the parties, including the State, which asks us to uphold the search under the wrong branch of Fourth Amendment law. The parties present the question as one of probable cause, but the Supreme Court has recognized that, in certain circumstances, the good-faith exception does not require the suppression of evidence when law enforcement, without engaging in misconduct, proceeds under a defective search warrant. *See United States v. Leon*, 468 U.S. 897, 915-16 (1984); *State v. Brooks*, 838 N.W.2d 563, 574 (Minn. 2013) (Stras, J., concurring). The facts of this case, in particular, suggest that the officers may have relied in good faith on what turned out to be

a facially valid, yet constitutionally defective, search warrant, which did not place a limit on the types of tests that law enforcement could conduct on Fawcett's blood sample.[4]  *See Leon*, 468 U.S. at 922.  Rather than unnaturally stretching the concept of probable cause, as I believe the court does here, in an appropriate case and under the right set of facts, I would be open to considering whether to adopt the good-faith exception in full.  *See State v. Lindquist*, 869 N.W.2d 863, 876 (Minn. 2015) ("[T]he good-faith exception adopted here applies *only* when law enforcement officers act pursuant to binding appellate precedent."  (emphasis added)).

---

[4]     Justice Lillehaug's dissent misses the point of this discussion of the good-faith exception.  The point is not that the State should benefit from a rule that it never invoked.  It should not.  Rather, it is that the facts of this case present the precise situation in which courts evaluate a search under the good-faith exception.  In fact, this case is so similar to *Leon*, the seminal good-faith-exception case, that there is little to distinguish them.  As in *Leon*, the officers here acted under a warrant issued by a "neutral and detached" magistrate; there is no evidence that any officers were dishonest or reckless in preparing the application and affidavit; and the officers acted in accordance with a facially valid, yet constitutionally defective, warrant that lacked probable cause for the search conducted.  468 U.S. at 919-20.  Under these facts, examining the possible applicability of the good-faith exception, not stretching the concept of probable cause, would have been the proper line of analysis for determining whether to suppress the evidence.

DISSENT

LILLEHAUG, Justice (dissenting).

I join Parts I and II of Justice Stras' dissenting opinion. The search-warrant application and affidavit, on their face, failed to establish probable cause for the search of appellant's blood for controlled substances.

I do not join Part III of Justice Stras' dissent. Justice Stras uses Part III to announce his interest in an issue not raised by the parties and thus not before us: whether the so-called good-faith exception to the exclusionary rule should be expanded.

Although I disagree with Part III, Justice Stras appropriately makes clear (in italics) that, under *State v. Lindquist*, 869 N.W.2d 863 (Minn. 2015), the exception applies *only* when officers act pursuant to binding appellate precedent. *Lindquist* did not adopt *United States v. Leon*, 468 U.S. 897 (1984), and its progeny, but rather recognized only a "narrow[]" exception that was "a small fragment of federal good-faith jurisprudence," 869 N.W.2d at 876.


HUDSON, Justice (dissenting).

I join in the dissent of Justice Lillehaug.